THE STATE OF OHIO, APPELLEE, *v.* WILSON, APPELLANT.

[Cite as State v. Wilson (1978), 55 Ohio App. 2d 64.]

(No. C-77172—Decided January 11, 1978.)

*Mr. Simon L. Leis, Jr., Mr. Leonard Kirschn*er and *William P. Whalen, Jr.,* for appellee.

*Mr. Kenneth F. Seibel,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County; and the transcript of the proceedings, the briefs and the arguments of counsel.

On the day of his trial, appellant pled guilty as charged to one count of rape. Having received a sentence of four to twenty-five years at the Ohio Reformatory, he now appeals, claiming the court failed to determine that he understood the maximum penalties involved, in violation of the requirements of Crim. R. 11(C)(2). We agree.

The record discloses, and the state agrees, that the judge did not mention the penalties involved, much less determine if Wilson understood them. But the record also discloses that Wilson signed an "Entry Withdrawing Plea Of Not Guilty And Entering Plea Of Guilty," in which the penalties (incarceration and fine) were fully set forth, and further that at the subsequent sentence hearing, ap-

pellant clearly indicated that he knew when he offered the plea that he could be sentenced to seven to twenty-five years. The state claims there was substantial compliance with Crim. R. 11(C)(2).

How much has the strict rule of *State* v. *Caudill* (1976), 48 Ohio St. 2d 342, been modified by *State* v. *Stewart* (1977), 51 Ohio St. 2d 86? *Stewart* speaks of substantial compliance with Crim. R. 11(C) and of the need to show prejudice before a guilty plea can be vacated. However, for the several reasons set forth below, we believe the *Stewart* exception must be limited to the facts in that case.

The syllabus in *Stewart* reads as follows:

"Where an individual is indicted on a charge of aggravated murder, with specifications thereto, and the trial court accepts a plea of guilty to the lesser included offense of murder. (R. C. 2903.02) without personally advising the defendant that he is ineligible for probation, such omission does not constitute prejudicial error, and there is substantial compliance with the provisions of Crim. R. 11. (Paragraph one of the syllabus in *State* v. *Caudill*, 48 Ohio St. 2d 342, modified.)"

We note that the first paragraph of the *Caudill* syllabus is only modified, not reversed, and that the other two paragraphs thereof are unchanged. As promulgated in 1976, the three paragraphs of *Caudill* read as follows:

"1. In accepting a written plea of no contest to a felony charge, the trial court must adhere scrupulously to the provisions of Crim. R. 11(C)(2).

"2. Adherence to the provisions of Crim. R. 11(C)(2) requires an oral dialogue between the trial court and the defendant which enables the court to determine fully the defendant's understanding of the consequences of his plea of guilty or no contest.

"3. The requirements of Crim. R. 11(C)(2) are not satisfied by a written statement by the defendant or by representations of his counsel."

A meaningful dialogue is still required, and written statements do not satisfy the requirements of the rule. The dialogue in the instant case, considering the total ab-

sence of any mention of the penalty, could not lead to a full understanding by appellant of the consequences of his plea.

The potential sentence hanging over a pleading defendant is one of the important matters on his mind, if not the most important, it being a major "consequence" of his plea. The court need take but a few moments to determine whether the accused understands the penalties involved, a necessary step in finding the answer to the central question whether the plea is offered voluntarily. We deem it proper to obligate the court to spread on the record at this pivotal hearing the entire basis of its conclusions and determinations when a plea is offered, thus foreclosing repeated future attempts by the offender to evade the plainly foreseeable results of his deliberate choice.

Adherence to Crim. R. 11(C) does not require "rote recitation" or "ritualistic incantation." The ascertainment of voluntariness demands an inquiry into specific constitutional waivers and defendant's knowledge of certain aspects of the aftermath of his plea. The language of the rule need not be repeated *verbatim*, but its checklist of essential items should be covered.

When we weigh the advantages and disadvantages of strict adherence to the rule, the balance tips in favor of full compliance. For the sentencing judge, strict adherence is not burdensome: it takes a matter of minutes. But the accused is subjecting himself to possible incarceration for a matter of months, if not years. This is a moment of considerable significance in his life. In addition to waiving trial, he is, then and there, testifying against himself, and his waiver of his Fifth Amendment rights cannot logically be called knowing, intelligent and voluntary unless he is aware of the consequences. A presumption of prejudice is proper, when and if the court, which is the final arbiter of constitutional rights, fails to take every reasonable step to protect the defendant's constitutional rights.

Finally, this court has held that strict adherence is required, in a series of cases beginning with *State* v. *Dur-*

*ham,* No. C-74595, rendered September 29, 1975. Our decision in the instant case is consistent.

The assignment of error is well taken. We reverse and remand for further proceedings.

*Judgment reversed.*

SHANNON, P. J., CASTLE and BLACK, JJ., concur.