The STATE of Ohio, Appellee,

v.

YANEZ, Appellant.

[Cite as *State v. Yanez,* 150 Ohio App.3d 510, 2002-Ohio-7076.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020098.

Decided Dec. 20, 2002.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Emma Seta, Assistant Prosecuting Attorney, for appellee.

Marilyn Zayas–Davis, for appellant.

GORMAN, Judge.

{¶ 1} The defendant-appellant, Antonio Yanez, appeals from the judgment of the trial court overruling his postsentence motion to withdraw his plea of guilty to two counts of aggravated vehicular assault. He contends that his guilty plea was not knowingly, understandingly, and intelligently entered, because the trial court, before accepting his plea, failed to personally advise him, as required by R.C. 2943.03(A), of the risk of deportation, exclusion from the country, and denial of naturalization following conviction. We agree.

{¶ 2} On November 7, 2002, with a court-appointed counsel and an interpreter, Yanez, who is not a citizen of the United States, entered a plea of guilty to two counts of aggravated vehicular assault, in violation of R.C. 2903.08(A)(1). The trial court sentenced him to a three-year prison term and ordered a ten-year driver's-license suspension and restitution in the sum of $17,863.

{¶ 3} After he was sentenced, Yanez's family retained new counsel. Six days after the trial court entered Yanez's judgment of conviction, his newly retained counsel moved to vacate his guilty plea. At a hearing on his motion, Yanez contended that although he had made it known that he was not a citizen of the United States, the trial court, before accepting his guilty plea, did not personally inform him, as required by R.C. 2943.03(A), of the prospect of deportation, exclusion, and denial of naturalization. The trial court overruled Yanez's motion, concluding that he had knowingly, intelligently and voluntarily entered his guilty plea.

### The Immigration–Consequences Warning of R.C. 2943.031

{¶ 4} R.C. 2943.031(A) states, "[P]rior to accepting a plea of guilty or a plea of no contest to an indictment * * * charging a felony * * * the court *shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement.*

{¶ 5} 'If you are not a citizen of the United States you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.' " (Emphasis added.)

{¶ 6} R.C. 2943.031(D)[1] continues, "Upon motion of the defendant, the court *shall set aside the judgment and permit the defendant to withdraw a plea of*

---

1. R.C. 2943.031(D) as printed in Page's Revised Code Annotated contains a typographical error in that it states that a defendant can only plead not guilty by reason of insanity after

*guilty* or no contest and enter a plea of not guilty or not guilty by reason of insanity, if, after the effective date of this section, the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Emphasis added.)

{¶ 7} The immigration-consequences warning required by R.C. 2943.031(A) is the same or substantially the same as that required by statute in other jurisdictions, including California, Connecticut, the District of Columbia, Florida, Georgia, Hawaii, Massachusetts, Maryland, Minnesota, Montana, New Mexico, New York, North Carolina, Oregon, Rhode Island, Texas, Washington, and Wisconsin. See *Immigration & Naturalization Serv. v. St. Cyr* (2001), 533 U.S. 289, 322, 121 S.Ct. 2271, 150 L.Ed.2d 347, fn. 48. The Immigration and Naturalization Act provides, in relevant part, that any alien who is convicted of a felony at any time after admission is deportable. See Section 1227(a)(2)(A), Title 8, U.S.Code. First enacted in California in 1977, the warnings are a response to Congressional measures limiting potential deportation relief for convicted felons by removing the authority of the United States Attorney General to grant discretionary waivers to deportation. See Section 1228 et seq., Title 8, U.S.Code; see, also, *State v. Jamison* (2001), 105 Wash.App. 572, 592, 20 P.3d 1010; see, generally, McKinney, The Right of the Alien to be Informed of Deportation Consequences (1983), 21 San Diego L.Rev. 195, 214–215.

{¶ 8} There is no federal statute comparable to R.C. 2943.031. Absent statutory authority, federal courts uniformly hold that, by itself, the defendant's ignorance of the collateral consequences of a guilty plea, including deportation, does not render a guilty plea involuntary. See *United States v. Santelises* (C.A.2, 1975), 509 F.2d 703, 704; *United States v. Gavilan* (C.A.5, 1985), 761 F.2d 226, 228; *United States v. Campbell* (C.A.11, 1985), 778 F.2d 764, 768; see, generally, Chin & Holmes, Effective Assistance of Counsel and the Consequences of Guilty Pleas (2002), 87 Cornell L.Rev. 697. But for Ohio noncitizen defendants, the General Assembly's enactment of R.C. 2943.031 has transformed the otherwise collateral consequences of a guilty plea into direct consequences.

---

withdrawing a guilty plea, omitting the words "not guilty or." The underlying act refers to either a plea of not guilty or not guilty by reason of insanity. Section 1, Sub.S.B. No. 95, 143 Ohio Laws, Part I, 531–532. See *Lakewood v. Shurney*, 8th Dist. No. 80885, 2002-Ohio-4789, 2002 WL 31031669, fn. 3.

### Yanez's Motion to Vacate His Plea

{¶ 9} On December 5, 2001, Yanez moved to vacate his plea "pursuant to Crim.R. 32.1." The entire substance of his motion, however, was based upon R.C. 2943.031, claiming that his plea was involuntarily made because the trial court had failed to comply with the statute. Both parties argued the motion as one made pursuant to R.C. 2943.031 and not one made under Crim.R. 32.1. See *Lakewood v. Shurney*, 8th Dist. No. 80885, 2002-Ohio-4789, 2002 WL 31031669, at ¶ 11.

{¶ 10} At the hearing, the trial court requested that the prosecution obtain an opinion from its appellate division on whether the requirements of R.C. 2943.031 were met at the plea hearing. When the state failed to respond to this request, on January 15, 2002, the trial court conducted a hearing on the matter. Yanez again repeated his contention that the trial court had not complied. The state argued, on the other hand, that the court had substantially complied with the statute when Yanez, through an interpreter, stated that he had read the plea form that contained a paraphrase of the immigration-consequences warning. The trial court noted that Yanez had knowingly, intelligently, and voluntarily entered his plea and then, by a handwritten, one-sentence entry, denied the motion.

### Substantive Right to Be Informed of the Immigration Consequences

{¶ 11} The first question is whether the immigration-consequences warning is a substantive right, and if so, whether the remedy found in R.C. 2943.031(D) is independent of the manifest-injustice standard of the procedural remedy in Crim.R. 32.1. The state's brief on appeal does not address Yanez's argument under R.C. 2943.031. Instead, relying on our decision in *State v. Hill* (1998), 129 Ohio App.3d 658, 718 N.E.2d 978, it argues that a Crim.R. 32.1 postjudgment motion to vacate a guilty plea in lieu of an appeal is actually a petition for postconviction relief governed by R.C. 2953.21 et seq. Accord *State v. Idowu*, 1st Dist. No. C–010646, 2002-Ohio-3302, 2002 WL 1393653. But, after the state had filed its brief, the Supreme Court held that postconviction relief as a collateral challenge to a judgment of conviction pursuant to R.C. 2953.21 is not an exclusive remedy but is independent of Crim.R. 32.1, see *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, syllabus, and by implication, R.C. 2943.031. See *State v. Yuen*, 10th Dist. No. 01AP–1410, 2002-Ohio-5083, 2002 WL 31124023, at ¶ 26 and ¶ 29–31.

{¶ 12} Ordinarily, a motion to vacate a guilty plea is to be resolved under Crim.R. 32.1, which provides that "to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The defendant has the burden of proving manifest injustice, and the resolution of the motion is addressed to the sound discretion of

the trial court. See *State v. Smith* (1977), 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324, paragraphs one and two of the syllabus.

{¶ 13} Where the trial court fails to address the noncitizen defendant personally about the immigration consequences that could result from his guilty plea, or to determine whether he understands the warning, R.C. 2943.031(D) provides a parallel remedy in which the court "shall set aside" the judgment and permit the defendant to withdraw the guilty plea. The defendant's burden is to establish only that the trial court, before accepting the guilty plea, was aware that the defendant was a noncitizen but failed to comply with R.C. 2943.031(A) by personally addressing the defendant and giving the three immigration warnings.

{¶ 14} Unlike a ruling on a motion made pursuant to Crim.R. 32.1, a ruling based on R.C. 2943.01 is not reviewed on a standard of abuse of discretion. R.C. 2943.031 does not grant the trial court the discretion to determine whether the guilty plea should be vacated. Instead, it mandates that the plea be vacated in the absence of the immigration-consequences warning. See *State v. Yuen*, 10th Dist. No. 01AP–1410, 2002-Ohio-5083, 2002 WL 31124023, at ¶ 32.

{¶ 15} A procedural rule like Crim.R. 32.1, made pursuant to the Modern Courts Amendment, Section 5(B), Article IV, Ohio Constitution, establishes only a procedural right. If a conflict exists between a rule and a statute, the rule will control matters of procedure, but a rule cannot abridge, enlarge, or modify a substantive right. See *State v. Slatter* (1981), 66 Ohio St.2d 452, 454, 20 O.O.3d 383, 423 N.E.2d 100. In *State ex rel. Holdridge v. Indus. Comm.* (1967), 11 Ohio St.2d 175, 178, 40 O.O.2d 162, 228 N.E.2d 621, the Supreme Court provided the following formula: "It is doubtful if a perfect definition of 'substantive law' or 'procedural or remedial law' could be devised. However, the authorities agree that, in general terms, substantive law is that which creates duties, rights, and obligations, while procedural or remedial law prescribes methods of enforcement of rights or obtaining redress." See *Krause v. State* (1972), 31 Ohio St.2d 132, 145, 60 O.O.2d 100, 285 N.E.2d 736; see, also, *State v. Weber* (1997), 125 Ohio App.3d 120, 130, 131, 707 N.E.2d 1178; *Cuyahoga Falls v. Bowers* (1984), 9 Ohio St.3d 148, 9 OBR 438, 459 N.E.2d 532, syllabus.

{¶ 16} The need to provide the R.C. 2943.031(A) warning to the defendant and the requirement of R.C. 2943.031(D) that the trial court vacate a guilty plea for noncompliance are interdependent. Together they confer a substantive right that was not available to defendants before the General Assembly enacted the statute in 1989. They are inextricably intertwined with the defendant's expected right to be informed of the risks of deportation, exclusion, and denial of naturalization before he enters a guilty plea. Vacation of the judgment of conviction is the essence of the defendant's insistence that he be warned as the General Assembly intended. As a substantive right, R.C. 2943.031(D) is not

superseded by Crim.R. 32.1. Neither does a motion made pursuant to R.C. 2943.031 prevent a trial court from exercising its sound discretion and setting aside a plea pursuant to Crim.R. 32.1. See R.C. 2943.031(F).

{¶ 17} Because R.C. 2943.031 provides a substantive remedy, it prevails over the procedural remedy of Crim.R. 32.1 and is not subject to a manifest-injustice standard. In so holding, we follow the Tenth Appellate District's decision in *State v. Weber*, 125 Ohio App.3d 120, 707 N.E.2d 1178. See, also, *State v. Mason*, 2d Dist. No. 2001–CA–113, 2002-Ohio-930, 2002 WL 242662, at ¶ 43; *State v. Quran*, 8th Dist. No. 80701, 2002-Ohio-4917, 2002 WL 31087704, at ¶ 21. Yanez had a substantive right to be personally addressed by the trial court and to receive the immigration-consequences warning before entering his plea of guilty. Indeed, R.C. 2943.031(A) sets out the very words that the court should have employed in addressing the defendant.

## What Level of Compliance Is Required?

{¶ 18} The record of the proceedings below reveals that the trial court did not personally address Yanez and give him the immigration-consequences warning. Despite the trial court's failure to personally inform Yanez of the warning, the record includes a written plea form, signed by Yanez and by his attorney, enumerating the Crim.R. 11(C) rights he acknowledged he was waiving by entering a guilty plea. The plea form also recited the immigration-consequences portion of the warning found within the quotation marks in R.C. 2943.031(A) as follows: "I am _____ am not __x__ (initial) a citizen of the United States of America. I understand that if I am not a citizen of the United States, a conviction of the offense(s) to which I am pleading guilty may have the consequence of deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States."

{¶ 19} Although the trial court in its colloquy through the interpreter personally informed Yanez of his constitutional and other rights listed in Crim.R. 11(C), the extent of its remarks concerning Yanez's understanding of the immigration consequences of R.C. 2943.031(A) contained in the written plea form was as follows:

{¶ 20} "THE COURT: And I want to ask him if the [plea] form was read him?

{¶ 21} "THE INTERPRETER: Yes.

{¶ 22} "THE COURT: And if he understood it?

{¶ 23} "THE INTERPRETER: Yes.

{¶ 24} "THE COURT: And he signed it of his own free will?

{¶ 25} "THE INTERPRETER: Yes.

{¶ 26} "THE COURT: Signing this of his own free will?

{¶ 27} "THE INTERPRETER: Yes."

{¶ 28} As the state argued at the hearing on Yanez's motion in the trial court, the trial court substantially complied with the statute when Yanez, through an interpreter, stated that he had read the plea form that contained a version of the immigration-consequences warning. But Yanez contends that the General Assembly intended that the trial court personally address the defendant when providing the statutory advisement. We agree.

{¶ 29} The principal goal of statutory interpretation is to give effect to the intent of the legislature. See *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 39, 741 N.E.2d 121. The court must first look to the language of the statute. If the language unambiguously and distinctly expresses the sense of the legislative body, it must be applied as written. Id.; see, also, *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672. The General Assembly has put the three required warnings—deportation, exclusion from the United States, and denial of naturalization—in quotation marks. We find no other criminal statute in which the General Assembly has used quotation marks to designate the trial court's colloquy with a defendant. See, also, *State v. Quran*, 2002-Ohio-4917, 2002 WL 31087704, at ¶ 21. The use of quotation marks and the command to the trial court that it "address the defendant personally" and "provide * * * the advisement" indicate a clear intent by the General Assembly that each warning should be given to ensure that a person pleading guilty or no contest knows exactly what immigration consequences his plea may have. It is an acknowledgement that, at least to some defendants, the collateral consequences of a plea, namely deportation, exclusion from admission to the United States, and denial of naturalization, may well be a more serious sanction than the imposition of a prison term. See, e.g., *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. at 322–323, 121 S.Ct. 2271, 150 L.Ed.2d 347; see, also, Chin& Holmes, Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L.Rev. at 700. The words of the statute, bracketed by quotation marks, do not permit any other interpretation.

{¶ 30} Crim.R. 11(C)(2) similarly requires a trial court to "first addres[s] the defendant personally" and to inform him of the constitutional and statutory rights he is waiving before accepting a plea of guilty or no contest. In order for a reviewing court to determine the propriety of a guilty plea, the record must show that the trial court personally addressed the defendant and meaningfully informed him that he was waiving certain constitutional rights: the privilege against compulsory self-incrimination, the right to a jury trial, the right to confront accusers, and the right of compulsory process of witnesses. See *Boykin*

*v. Alabama* (1969), 395 U.S. 238, 242–243, 89 S.Ct. 1709, 23 L.Ed.2d 274; see, also, *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, paragraph one of the syllabus.

{¶ 31} When dealing, however, with the nonconstitutional warnings of Crim.R. 11(C)(2)—nature of the charge, maximum possible sentence, eligibility for probation or community control—the trial court need only "substantially comply" with the rule. See *State v. Ballard* (1981), 66 Ohio St.2d 473, 475, 20 O.O.3d 397, 423 N.E.2d 115, citing *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163; see, also, *State v. Thomas* (1990), 67 Ohio App.3d 127, 132, 586 N.E.2d 198. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.

{¶ 32} We hold that the statutory right to receive the immigration-consequences warning is similar to the nonconstitutional warnings enumerated in Crim.R. 11(C)(2). As with those warnings, a substantial-compliance standard of scrutiny determines whether the trial court gave each of the three warnings and ensured that the defendant knew what immigration consequences his plea might have. See, also, *State v. Mason*, at ¶ 45. The substantial compliance of the trial court must be affirmatively demonstrated on the record. See R.C. 2943.031(E).

{¶ 33} We do not agree with the rationale advanced by the Eighth Appellate District in *State v. Quran*, 2002-Ohio-4917, 2002 WL 31087704, at ¶ 23. The court rejected the state's substantial-compliance argument and found no compliance with R.C. 2943.031(A) where the trial court did not use the exact wording of the statute and failed to mention deportation. In light of the difficulties in literally communicating the quoted text of R.C. 2943.031(A) to a defendant who does not speak or read English by a trial court that probably does not speak the language of the defendant, absolute compliance cannot be consistently achieved. Surely, the statute is satisfied if the interpreter reads it in open court under the court's own supervision. In that way, the trial court ensures that the defendant receives the warning in open court in a meaningful manner and that the defendant understands the prospect of deportation, exclusion from the United States, or denial of naturalization if he pleads guilty. This is the very definition of substantial compliance.

{¶ 34} Similarly, most other jurisdictions that have enacted a statute similar to R.C. 2943.031 recognize that although the better practice is for the trial court to read the warning verbatim, literal compliance is unnecessary. For example, Connecticut's deportation-warning statute, like Ohio's statute, requires that a defendant be warned of three potential immigration consequences of a guilty plea identified within quotation marks. Conn.Gen.Stat.Ann. 54–1j. In approving a

plea preceded by a warning that informed the defendant only of his risk of deportation and exclusion, but omitting mention of denial of naturalization, the Connecticut Supreme Court held that "only substantial compliance with the statute is required to validate a defendant's guilty plea." *State v. Malcolm* (2001), 257 Conn. 653, 662, 778 A.2d 134. Similarly, where a trial court mentioned only that the defendant could be sent back to his original country, the warning substantially complied with Texas's deportation-advisement statute. See *Garcia v. State* (Tex.App.1994), 877 S.W.2d 809, 813.

{¶ 35} We likewise hold that substantial compliance is the better rule to determine if the defendant knowingly entered his guilty plea, particularly in those cases where the defendant's claim comes after a lengthy lapse of time when witnesses or evidence are no longer available. See, e.g., *State v. Mason*, 2002-Ohio-930, 2002 WL 242662, at ¶ 2; see, also *Commonwealth v. Rzepphiewski* (2000), 431 Mass. 48, 725 N.E.2d 210.

Is a Warning on the Written Plea Form Substantial Compliance?

{¶ 36} The record is clear that the trial court did not personally address Yanez, give him the warnings, and ensure that he understood the prospect of deportation, exclusion, or denial of naturalization. The state, however, contended at trial that Yanez's signature on the plea form that specified the immigration consequences substantially complied with R.C. 2943.031.

{¶ 37} The Supreme Court has held that the trial court's failure to inform the defendant of postrelease control under R.C. 2967.28 as part of the sentence is not reversible error if an explanation of those rights appears in the written plea form and in the sentencing entry. See *Woods v. Telb* (2000), 89 Ohio St.3d 504, 513, 733 N.E.2d 1103; see, also, *State v. Lattimore*, 1st Dist. No. C–010488, 2002-Ohio-723, 2002 WL 252451, at ¶ 31. The court's holding is not based on a substantial-compliance analysis and is distinguishable. Unlike the deportation warning in R.C. 2943.031, the postrelease-control sentencing statute requires only that the court "[n]otify the offender" of the potential for further supervision by the state. R.C. 2929.19(B)(3)(c). There is no requirement, as in R.C. 2943.031, that the court personally address the defendant and inform him of the immigration consequences of entering a plea of guilty.

{¶ 38} We have held that a trial court's failure to advise the defendant of the maximum sentence—a Crim.R. 11(C)(2) nonconstitutional right—even though he signed a written plea of guilty that recited the penalties, was not substantial compliance with Crim.R. 11(C). See *State v. Wilson* (1978), 55 Ohio App.2d 64, 9 O.O.3d 223, 379 N.E.2d 273; see, also, *Cleveland v. Chebib* (2001), 143 Ohio App.3d 295, 299, 757 N.E.2d 1223. A trial court's obligation to address the defendant personally and to inform him of these rights is specified in Crim.R.

11(C)(2). A similar right to be informed of the direct immigration consequences of a guilty plea by a meaningful dialogue between the court and the defendant is required by R.C. 2943.031(A); written statements do not satisfy this requirement. To hold otherwise would render meaningless the General Assembly's intent that the trial court "shall address the defendant personally" and give the warning. See R.C. 2943.031(A); see, also, *State v. Mason*, 2002-Ohio-930, 2002 WL 242662, at ¶ 44.

{¶ 39} Yanez's cryptic answers translated and relayed by the interpreter in response to the trial court's questions about the plea form did not furnish a fair understanding of the prospect of his deportation, exclusion, or denial of naturalization as the result of his guilty plea. Although Yanez responded "yes" to the court when asked if the plea form had been read to him, the record does not reflect whether the interpreter read the form to Yanez in open court or whether it was even read to him on the same day he entered his guilty plea. At all times while Yanez was the object of this ritual, his court-appointed counsel said nothing. Therefore, we hold that there was no substantial compliance with R.C. 2943.031(A).

{¶ 40} We are not suggesting that only the trial court has the power to read the warning to a defendant who does not speak or read English. The statute is satisfied if the interpreter reads the warning in open court under the court's supervision. The degree of a defendant's knowledge of English will determine the extent to which the trial court itself must go to meaningfully inform him of the consequences of his plea.

{¶ 41} There is also a role for defense counsel to play in this inquiry. The ABA Standards for Criminal Justice state that "[t]o the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea." ABA Standards for Criminal Justice: Pleas of Guilty (1999), Section 14–3.2(f); see, also, *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. at 323, 121 S.Ct. 2271, 150 L.Ed.2d 347, fn. 50; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 42} In federal courts under certain circumstances, it has been held that the collateral consequence of deportation, if agreed to by the defendant, may justify a more lenient sentence as a departure from the federal sentencing guidelines. See *United States v. Arefin* (C.A.6, July 6, 2000), No. 99–3448, 2000 WL 977303, fn. 3. The strategy is the same in Ohio trial courts, as competent counsel may successfully use the prospect of the defendant's deportation as a bargaining chip with the prosecution for reduction of the offense charged in return for a negotiated guilty plea. When unaware of the immigration consequences of a plea, defense counsel puts the defendant at risk of an actual sentence—incarcera-

tion and deportation—not "consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B)

{¶ 43} The consequence of deportation is not minimal, but it is most probably inevitable for the defendant. Unless the defendant is aware of the risk of deportation, he cannot appreciate whether it is in his best interest to waive his rights by entering a guilty plea. If vacation of a guilty plea is subject to the test of substantial compliance, the failure of counsel to inform his client of the consequences may well be critical to the defendant's understanding of his rights and the voluntariness of his guilty plea.

{¶ 44} Here, because the record does not establish that the trial court substantially complied with R.C. 2943.031(A) in accepting Yanez's plea of guilty, it was error for the trial court to overrule Yanez's motion to vacate his guilty plea. The assignment of error is sustained.

{¶ 45} Therefore, the judgment of the trial court denying Yanez's motion to withdraw his guilty plea is reversed. See R.C. 2943.031(D). This case is remanded to the trial court for trial or for further proceedings consistent with the law and this opinion.

Judgment reversed
and cause remanded.

SUNDERMANN, J., concurs.

PAINTER, P.J., concurs separately.

PAINTER, Presiding Judge, concurring separately.

{¶ 46} The result is correct, and most of the analysis, but I believe that the trial court must strictly comply with R.C. 2943.031. The legislature has actually written a clear statute. It put in specific quoted language that the court must provide to a defendant. When the language is clear, which is not always the case, we should take advantage of that luxury. We should enforce it as written—why is it so difficult to comply with a clear legislative mandate?

{¶ 47} To comply with the statute, the language should be read verbatim to the defendant by the court at the plea hearing. Then, the court should question the defendant to determine that the defendant understands the warning. The best practice would also include having the language verbatim in the plea form. When an interpreter is involved, the court must read the statutory language, have the interpreter translate it to the defendant, and then question the defendant (through the interpreter) to determine that the defendant understands.

{¶ 48} The Ohio Supreme Court has stated, regarding another statute, "If we were to ignore this statute, * * * no clear and unambiguous statute would be safe

from a 'substantial compliance' interpretation."[2]  Our colleagues in the Eighth Appellate District quoted that language when holding that the trial court must strictly comply with R.C. 2943.031.[3]  I agree.

---

2.  *State v. Pless* (1996), 74 Ohio St.3d 333, 340, 658 N.E.2d 766.

3.  *State v. Quran*, 8th Dist. No. 80701, 2002-Ohio-4917, 2002 WL 31087704.