DECISION AND JUDGMENT ENTRY
{¶ 1} James E. Hamilton, Jr. appeals his aggravated murder conviction following his guilty plea, arguing that he did not knowingly, intelligently, and voluntarily enter his plea because the court incorrectly informed him that he would be subject to post-release control, when he actually is subject to parole. Although the court incorrectly referred to both parole eligibility and post-release control, the court's misstatements do not render Hamilton's guilty plea invalid. Crim.R. 11(C) required the court to advise Hamilton of the maximum penalty, which is imprisonment for life. The trial court advised him of that fact and Hamilton stated that he understood the maximum penalty was life imprisonment with parole eligibility after twenty years. Nothing in the court's post-release control discussion imparted to Hamilton that he would be subject to anything less than a life sentence. Therefore, Hamilton's argument that he did not knowingly, intelligently, and voluntarily plead guilty because he was unaware of the actual maximum penalty is meritless.
 {¶ 2} Hamilton also contends that trial counsel rendered ineffective assistance of counsel by failing to object to the court's misstatements regarding post-release control. Because Hamilton has not shown how counsel's failure prejudiced his decision to plead guilty, this argument is also meritless. Therefore, we affirm the court's judgment.
 {¶ 3} After being arrested for killing his sixty-nine year old landlord, Hamilton entered a "waiver and entry on information," in which he stated that he understood that aggravated murder is "punishable by imprisonment for life with parole eligibility after 20 full years of imprisonment without reduction." Unfortunately, the entry also recited:
[A] period of control or supervision by the Adult Parole Authority after release from prison is mandatory in this case. The control period may be a maximum term of FIVE years, no reduction. A violation of any post-release control rule or condition can result in a more restrictive sanction while released, an increased duration of supervision or control, up to the maximum set out above and/or re-imprisonment even though I have served the entire stated prison sentence imposed upon me by this Court for all offenses set out above. Re-imprisonment can be imposed in segments of up to 9 months, but cannot exceed a maximum of ½ of the total term imposed for all of the offenses set out above. If I commit another felony while subject to this period of control or supervision, I may be subject to an additional prison term consisting of the maximum period of unserved time remaining on post-release control as set out above or 12 months whichever is greater. This prison term must be served consecutively to any term imposed for the new felony you are convicted of committing.
 {¶ 4} During the hearing, the court advised Hamilton that the penalty for aggravated murder is life in prison without the possibility of parole until he serves twenty years. Hamilton responded that he understood. Later, the court reiterated that the term is life without the possibility of parole until twenty years have expired. Hamilton again stated that he understood. The court then improperly advised him "that even if you serve your sentence, this being a felony akin to a first degree felony, that you can be supervised or that you will be supervised even if you leave prison after serving your term and that the supervision would be for a mandatory period and in this case up to five years of post release control." Hamilton stated he understood. The court explained, "So let's say you served twenty years and you are released. You would still be under supervision. THE DEFENDANT: Five years." The court advised him that he could be sent back to prison if he violates post-release control and that "[r]eimprisonment could be [imposed] in segments of up to nine months or could not exceed the maximum of one-half of the total term imposed and this is somewhat irrelevant because the term is life. So you understand you could be sentenced back to prison for up to nine months any time you violate the terms of post-release control." However, twice the court subsequently noted that the maximum sentence was life with parole eligibility after 20 years. Hamilton did not object or indicate that he was confused at any time during sentencing. However, he has appealed his conviction.
 {¶ 5} Hamilton assigns the following error:
James E. Hamilton was deprived of his right to due process under theFourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution when the trial court accepted an unknowing, unintelligent, and involuntary guilty plea.
 {¶ 6} Hamilton contends that he did not knowingly, intelligently, and voluntarily plead guilty because the trial court did not inform him of the "actual maximum penalty" he could face if he were granted parole and subsequently re-incarcerated. He correctly asserts that the trial court improperly advised him that he would be subject to post-release control for five years after his release and that he could be re-imprisoned for a period of up to nine months if he violated the terms of his postrelease control. Hamilton notes that he would be subject to parole, not post-release control, and that if he violated his release conditions, his life prison term could be reinstated. Within his assignment of error, Hamilton also argues that counsel rendered ineffective assistance of counsel by failing to object to the trial court's misstatements.
 {¶ 7} Because Hamilton did not object to the court's reference to post-release control, he was waived this mistake except to the extent it amounts to plain error. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For a reviewing court to find plain error, the following three conditions must exist: (1) an error in the proceedings; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," i.e., the trial court's error must have affected the outcome of the trial. See, e.g., State v. Noling98 Ohio St.3d 44, 56, 2002-Ohio-7044; State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68, 759 N.E.2d 1240; State v. Sanders, 92 Ohio St.3d 245,257, 2001-Ohio-189, 750 N.E.2d 90; State v. Hill, 92 Ohio St.3d 191, 200,2001-Ohio-141, 749 N.E.2d 274. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990), 53 Ohio St. 3d 107, 111,559 N.E.2d 710; see, also, State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" Barnes, 94 Ohio St.3d at 27 (quoting UnitedStates v. Olano (1993), 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting United States v. Atkinson (1936), 297 U.S. 157, 160, 56 S.Ct. 391,80 L.Ed. 555).
 {¶ 8} Generally, a defendant who pleads guilty or no contest waives all non-jurisdictional defects in the proceedings. See Crim.R. 11(B)(1); see, also, United States v. Broce (1989), 488 U.S. 563, 109 S.Ct. 757,102 L.Ed.2d 92; State v. Fitzpatrick, 102 Ohio St.3d 321, 2004-Ohio-3167,810 N.E.2d 927, at ¶ 78 ("`[A] guilty plea * * * renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established,"' quoting Menna v.New York (1975), 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195, fn. 2). "Therefore, a defendant who voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel `may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."' Id., quoting Tollett v. Henderson (1973), 411 U.S. 258, 267, 93 S.Ct. 1602,36 L.Ed.2d 235. However, a guilty or no contest plea does not preclude a defendant from challenging the trial court's determination that he or she knowingly, intelligently, and voluntarily entered the plea. State v.Engle (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450.
 {¶ 9} In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we must review the record to ensure that the trial court complied with the constitutional and procedural safeguards contained within Crim.R. 11. State v. Kelley
(1991), 57 Ohio St.3d 127, 128, 566 N.E.2d 658 ("When a trial court or appellate court is reviewing a plea submitted by a defendant, its focus should be on whether the dictates of Crim.R. 11 have been followed."); see, also, State v. Carter (1979), 60 Ohio St.2d 34, 396 N.E.2d 757. Under Crim.R. 11(C)(2), the trial court shall not accept a guilty plea without first addressing the defendant personally and: "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing. (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence. (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 10} The purpose of Crim.R. 11(C) is "to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty." State v. Ballard (1981),66 Ohio St.2d 473, 479-80, 423 N.E.2d 115. The trial court need not recite the exact language of Crim.R. 11(C) when informing a criminal defendant of his or her constitutional rights. Instead, we will affirm a trial court's acceptance of a guilty plea if the record reveals that the trial court engaged in a meaningful dialogue with the defendant and explained, "in a manner reasonably intelligible to that defendant," the constitutional rights the defendant waives by pleading guilty. Id., paragraph two of the syllabus.
 {¶ 11} A trial court's failure to adequately inform a defendant of his constitutional rights invalidates a guilty plea under a presumption that it was entered involuntarily and unknowingly. State v. Griggs,103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, at ¶ 12. On the other hand, the failure to comply with non-constitutional rights will not invalidate a plea unless the defendant suffered prejudice. Id. The test for prejudice is "`whether the plea would have otherwise been made.'" Id. (quoting State v. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474).
 {¶ 12} Knowledge of the maximum penalty is not constitutionally required for a knowing, intelligent and voluntary plea. But, Crim.R. 11(C)(2)(a) requires the trial court to explain to a defendant "the nature of the charge and of the maximum penalty involved." State v.Clark, Pickaway App. No. 02CA12, 2002-Ohio-6684 (overruled on other grounds by State v. White, 103 Ohio St.3d 580, 2004-Ohio-5989,817 N.E.2d 393), citing State v. Johnson (1988), 40 Ohio St.3d 130, 133,532 N.E.2d 1295. "[A] defendant must know the maximum penalty involved before the trial court may accept his guilty plea." State v. Corbin
(2001), 141 Ohio App.3d 381, 386-387, 751 N.E.2d 505, citing Statev. Wilson (1978), 55 Ohio App.2d 64, 379 N.E.2d 273; State v. Gibson
(1986), 34 Ohio App.3d 146, 517 N.E.2d 990. But nothing in Crim.R. 11 requires the court to inform a defendant of the sanction for violating conditions of an early release from the maximum penalty.
 {¶ 13} Here, the trial court advised Hamilton four times during the combined plea and sentencing hearing that his aggravated murder conviction carried a life sentence with parole eligibility after twenty years. After two of the admonishments where the court told him that life with parole eligibility after 20 years was the only sentence available, Hamilton stated that he understood. Thus, the court complied with Crim.R. 11(C)'s requirement to inform the defendant of the maximum penalty. The court's extraneous pronouncement regarding post-release control do not misstate the maximum penalty for the crime of aggravated murder. Because parole is not part of an offender's sentence, the maximum penalty is imprisonment for life.
 {¶ 14} R.C. 2967.28(B) identifies the felonies to which post-release control requirements apply. If post-release control applies, it is part of the sentence and the court must "include in the offender's sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment." R.C. 2929.14(F); see, also, Woods v. Telb (2000), 89 Ohio St.3d 504. R.C. 2929.19(B)(3) also specifies the felonies to which post-release control applies. Aggravated murder, an unclassified felony, is not among them. See Statev. Wotring, Lake App. No. L-99-114, 2003-Ohio-326.
 {¶ 15} In State v. Prom, Butler App. No. CA2002-01-007, 2003-Ohio-6543, the appellate court determined that Prom did not knowingly, intelligently, and voluntarily plead guilty when the trial court incorrectly informed Prom that her murder conviction carried a period of post-release control. The trial court explained that Prom faced a mandatory sentence for her R.C. 2903.02(A) murder conviction of fifteen years to life and then sentenced her, in accordance with a plea agreement, to eighteen years to life. The court explained that she might be eligible for parole after eighteen years. The court then stated:
And once you're released from prison, you're going to be supervised by the Adult Parole Authority in Ohio, under a provision known as post-release control. And under that provision, that will be for at least five years. And you will be required to obey their rules. And if you fail to obey their rules, they can make you go back to prison for up to half of the original sentence.
So, if you were to serve 18 years in prison, you could end up going back to prison for another nine years, if you don't obey the rules of the Adult Parole Authority, and that would be in time increments, or segments of up to nine months at a time. * * *.
 {¶ 16} In deciding that the trial court's misstatements rendered Prom's guilty plea invalid, the appellate court explained:
By erroneously advising Prom that post-release control requirements are mandatory in her case, and what terms of imprisonment might be imposed for their violation, the court inadvertently understated the maximum penalty that might apply to any re-incarceration after Prom's release. If Prom is ever released, the more onerous potential penalties of parole arising from Prom's life sentence instead apply if she is later re-incarcerated. That's not to say that the court was required to give Prom any advice at all concerning parole; it wasn't, and courts rarely if ever do. However, by delving into these inapplicable post-release control penalties in a mistaken effort to comply with Crim.R. 11(C), as it implicates the statutory requirements applicable to post-release control, the court inadvertently created a Crim.R. 11(C) problem.
Id. at ¶ 27. The court stated that "in consequence of the court's erroneous advice to her concerning post-release control, Prom necessarily was unaware of the maximum penalty to which she was exposed by her plea." Id. at ¶ 29.
 {¶ 17} We disagree with Prom's conclusion that the potential existence of more onerous penalties for parole violations renders Hamilton's plea involuntary. A defendant facing a life sentence is necessarily aware of the maximum penalty — life in prison. Although a possibility of parole exists, this does not mean that the defendant will be released from prison since there is no guarantee that a defendant will receive parole. See Greenholtz v. Inmates of the Nebraska Penal Corr. Complex (1979),442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (stating that a convicted person has no constitutional right to be conditionally released prior to the expiration of a valid sentence). Both an early release and a subsequent return are speculative. The fact that such contingencies might occur does not alter the fact that the maximum penalty Hamilton faces is life in prison. The court's misstatements about post-release control did not advise Hamilton that he had a right to early release or that he would be released after twenty years.
 {¶ 18} Hamilton's argument that he did not understand the maximum penalty is based upon his purported reliance in receiving a lesser sanction for violating conditions associated with an early release. That is, since he thought he would get post-release control rather than parole, he reasoned a violation of early release would not subject him to reimprisonment for life. There is some logic to this argument since post-release control, unlike parole, is part of a defendant's sentence. However, nothing in the court's misstatement about post-release control indicated that Hamilton would be or was entitled to early release. The maximum penalty remained life in prison. Hamilton is not subject to any greater penalty than the court described. The court's inaccurate minimization of the sanction for violating a totally discretionary early release does not change the maximum penalty Hamilton faces. Hamilton may well have been misled about how much time he would serve for violating parole, but his contention that he did not know the maximum penalty he faced for aggravated murder rings hollow. The record shows that Hamilton knew the penalty for the offense to which he was pleading guilty carried a life term in prison with only a possibility, not a right, to early release. Moreover, we remain skeptical that Hamilton would not have pled guilty but for the references to post-release control. We discern no manifest miscarriage of justice here. In fact, we see no prejudicial error at all. So, even if we did not apply the plain error standard, our result would be the same.
 {¶ 19} Consequently, Hamilton's claim that he did not knowingly, intelligently, and voluntarily plead guilty because the court failed to correctly inform him of the maximum penalty is meritless.
 {¶ 20} Hamilton next argues that his trial counsel's failure to object to the court's misstatements regarding post-release control constituted ineffective assistance of counsel.
 {¶ 21} Reversal of a conviction for ineffective assistance of counsel requires the defendant to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.State v. Smith (2000), 89 Ohio St.3d 323, 327, 731 N.E.2d 645, citingStrickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373. To show that counsel performed deficiently, the defendant must demonstrate that defense counsel's performance fell below an objective standard of reasonableness. Bradley. To show that counsel's deficient performance prejudiced the defense, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. State v. White (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772. If one component of the Strickland test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components. Strickland; Bradley.
 {¶ 22} Here, Hamilton failed to show that he would not have pled guilty if counsel had objected to the court's misstatements, thus allowing the court to then correctly inform him that he would be subject to parole conditions of release instead of post-release control. Furthermore, as we previously noted, Hamilton twice stated that he understood the maximum penalty to be life imprisonment with a possibility of parole after twenty years. Hamilton has not sufficiently demonstrated that counsel's failure to object to the court's misstatements prejudiced him.
 {¶ 23} Accordingly, we overrule Hamilton's assignment of error and affirm the court's judgment.
JUDGMENT AFFIRMED.