OPINION
{¶ 1} Plaintiff-appellant, State of Ohio ("the State"), appeals from the April 9, 2004 decision and judgment entry of the Franklin County Court of Common Pleas granting defendant-appellee, Chantha Yun's motion for leave to withdraw his plea of guilty or, in the alternative, to vacate and set aside his conviction and sentence. Finding that there was no showing of manifest injustice, we reverse the decision of the trial court.
 {¶ 2} Appellee was born in Cambodia and has been a permanent resident alien of the United States since June 11, 1985. On two separate occasions in July 1997, appellee had his 13-year-old niece perform fellatio on him. Appellee admitted to one act of fellatio. On March 5, 1999, appellee was indicted on four counts of rape, four counts of gross sexual imposition, four counts of sexual battery, and four counts of corruption of a minor.
 {¶ 3} Appellee entered into a plea agreement and, on November 8, 1999, he pled guilty to two counts of sexual battery, third-degree felonies. At the request of the State, the trial court nolle prossed the remaining 14 counts of the indictment. On January 31, 2000, the trial court placed appellee on three years of community control. Appellee was also placed on the sex offender caseload and was ordered to follow its terms and conditions. He was also directed by the trial court to maintain his employment and stay away from the victim and her family.
 {¶ 4} On July 9, 2002, appellee's community control was terminated early because he strictly and fully complied with all its terms and conditions and was deemed a model probationer. After his early release, appellee was arrested and detained by the Immigration and Naturalization Service ("INS") pending deportation for the two felony convictions. On March 3, 2004, appellee sought to withdraw his guilty plea arguing that the trial court failed to comply with R.C. 2943.01 when advising appellee of possible deportation and Crim.R. 11 in accepting his guilty plea.
 {¶ 5} On April 2, 2004, the trial court conducted an evidentiary hearing. After considering the evidence and reviewing the transcript of appellee's sentencing hearing, the trial court found that appellee was advised in compliance with R.C. 2943.01 and Crim.R. 11. Based on this statutory adherence, the trial court held that appellee was not entitled to withdraw his plea of guilty. However, the trial court did find that a refusal to allow appellee to withdraw his guilty plea because he was subject to deportation would result in a manifest injustice. The trial court stated, "[j]udging from the discretion and latitude afforded the court in determining manifest injustice, coupled with the dearth of applicable case law, a finding of manifest injustice borders on the `eye of the beholder' or `I'll know it when I see it' standard. In this case, I see it." (Decision and Judgment Entry, April 9, 2004, at 4-5.) The trial court noted that appellee paid his debt to society and was fully rehabilitated. "To steadfastly refuse to permit the defendant to withdraw his guilty plea and thereby subject him to deportation, abandoning his wife and child denying them his support, would be a manifest injustice." Id. Therefore, the trial court granted appellee's motion to withdraw his guilty plea. The State filed a timely appeal, asserting the following as error:
ASSIGNMENT OF ERROR
The common pleas court abused its discretion when it found "manifest injustice" based on the impending deportation of the defendant.
 {¶ 6} In its sole assignment of error, the State argues that it was error for the trial court to grant appellee's motion to withdraw his guilty plea. The State avers that the trial court acted arbitrarily when it determined that subjecting appellee to deportation proceedings would result in manifest injustice.
 {¶ 7} Crim.R. 32.1 permits a motion to withdraw a guilty plea "only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
The burden of establishing the existence of a manifest injustice is upon the individual seeking vacation of the plea. State v. Smith (1977),49 Ohio St.2d 261, paragraph one of the syllabus. Furthermore, a motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court. Id. at paragraph two of the syllabus.
 {¶ 8} An appellate court's review of a trial court's denial of a post-sentence motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion. State v.Peterseim (1980), 68 Ohio App.2d 211. "Absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed." State v. Xie (1992), 62 Ohio St.3d 521, 527. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 9} A manifest injustice has been defined as a "clear or openly unjust act." State ex rel. Schneider v. Kreiner (1998), 83 Ohio St.3d 203,208. Under the manifest injustice standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. Smith, supra, at 264. "Manifest injustice relates to some fundamental flaw in the proceedings which result in a miscarriage of justice or is inconsistent with the demands of due process." State v. Williams, Franklin App. No. 03AP-1214,2004-Ohio-6123, at ¶ 5, citing State v. Hall, Franklin App. No. 03AP-433, 2003-Ohio-6939, at ¶ 12.
 {¶ 10} We find that the trial court erred in concluding that the withdrawal of appellee's guilty plea was necessary to correct a manifest injustice. A manifest injustice occurs when a plea is not accurate, voluntary, and intelligent. Williams, supra. Appellee failed to meet his burden of establishing a manifest injustice. Here, there was no fundamental flaw in the proceedings, nor was appellee denied due process. Therefore, this particular case does not present any set of extraordinary circumstances warranting a withdrawal of appellee's plea.
 {¶ 11} As the trial court noted, the applicable provisions of R.C.2943.01 and Crim.R.11 were strictly adhered to at the sentencing hearing. From a review of the record, appellee was aware of the possibility of deportation proceedings:
The court: do you understand the possible Penalties?
The defendant: Yes ma'am.
* * *
The Court: Are you making this plea Voluntarily?
The Defendant: Yes, ma'am.
The Court: Has anyone promised you anything or arm-twisted you into changing your plea from a not guilty to guilty plea?
The Defendant: No.
* * *
The Court: Do you understand that if you are not a citizen of the united states you are hereby advised that the conviction of the offense to which you are pleading may have the consequences of deportation, exclusion from admission to the united states, or a denial of naturalization pursuant to the laws of the United States?
The defendant: Yes, ma'am. (Nov. 8, 1999 Tr. at 4-6.)
 {¶ 12} It is clear from appellee's testimony at the plea hearing that: (a) he was aware that deportation was possible; (b) he understood that no promises were being made about deportation; and (c) with that understanding, he still wanted to and did enter a plea of guilty. However, the trial court still found that a manifest injustice would occur if appellee were prevented from withdrawing his guilty plea subjecting him to deportation. Citing to several federal cases, the State argues that any consequence that results from actions taken by other government agencies, such as the INS, are collateral and beyond the authority of an Ohio court. We agree. Deportation is not a direct consequence of a guilty plea, as it is not definite, immediate, or automatic. U.S. v. Banda (C.A.5, 1993), 1 F.3d 354, 356; Varela v.Kaiser (C.A.10, 1992), 976 F.2d 1357, 1358. Deportation remains beyond the control and responsibility of the court in which that conviction was entered and it thus remains a collateral consequence thereof. U.S. v.Amador-Leal (C.A.9, 2002), 276 F.3d 511, 516.
 {¶ 13} Immigration consequences will not surface until the court's sentence has been served. Before a defendant can be deported, the INS must follow certain administrative procedures and must exercise its discretion to commence deportation proceedings. These proceedings are wholly independent of the court that imposes sentence. Deportation is a "purely civil action" separate and distinct from a criminal proceeding.I.N.S. v. Lopez-Mendoza (1984), 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483.
 {¶ 14} After reviewing the record, we find that appellee, before pleading guilty, knew and understood the charges against him and his rights under the law as well as the direct consequences of making the plea, including the possibility of deportation as a consequence of his guilty plea. As such, the trial court's decision to grant appellee's motion to withdraw his guilty plea was not necessary to correct a manifest injustice and was granted in error. As such, the State's assignment of error has merit and is well-taken.
 {¶ 15} For the foregoing reasons, the State's sole assignment of error is sustained and the decision of the Franklin County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
Brown, P.J., and Sadler, J., concur.