OPINION
{¶ 1} Defendant-appellant, Hua Lei ("appellant"), appeals from the March 9, 2005 judgment of the Franklin County Municipal Court overruling her motion for a new trial. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The procedural and factual history pertinent to this appeal follows. Appellant is a native of the People's Republic of China and is a legal permanent resident of the United States. On August 14, 2003, appellant was charged with domestic violence in violation of R.C. 2903.13(A). On January 8, 2004, appellant was convicted following a bench trial. Appellant was fined and placed on probation.
 {¶ 3} On March 2, 2004, United States immigration officials took appellant into custody for violations of the Immigration and Nationality Act. Specifically, the immigration officials alleged that she was subject to removal from the United States as a result of her conviction for domestic violence.[1]
Appellant was released from the custody of immigration officials on bond pending the disposition of her immigration status.
 {¶ 4} On June 7, 2004, appellant filed a motion "to vacate convictions due to ineffective assistance of counsel" pursuant to Crim.R. 32.1, which appellant later recast as a petition for post-conviction relief pursuant to R.C. 2953.21. The trial court overruled appellant's motion.[2] Appellant did not appeal this judgment.
 {¶ 5} On November 24, 2004, appellant filed a motion for a new trial due to ineffective assistance of counsel, pursuant to Crim.R. 33(A)(1) and (5). Therein, appellant conceded that the motion was untimely but asserted that she was unavoidably prevented from filing the motion within the time period provided within the rule. According to appellant, her trial counsel did not advise her that a conviction for domestic violence would result in deportation. Appellant alleged two specific instances in which the ineffective assistance of trial counsel prejudiced her. First, appellant alleged that she declined an offer from the prosecution for a plea bargain on a reduced charge of disorderly conduct, which carries no risk of deportation, and instead chose to go to trial. But for counsel's ineffectiveness, she said, she would have accepted the plea agreement. Second, appellant argued that she would have taken the stand and testified that she acted in self-defense, had her trial counsel advised her properly as to the risk of deportation.
 {¶ 6} In support of her motion for a new trial, appellant resubmitted the affidavit she had originally attached to her motion to vacate her conviction pursuant to Crim.R. 32.1 and R.C.2953.21. Therein, appellant described her initial meeting with her trial counsel, Eric Johnson ("Johnson"), in which appellant described her version of the events underlying the criminal charge. Appellant explained to Johnson that her husband attempted to rape her, and that she pushed her husband to get him off of her. According to appellant, Johnson stated that because she had no proof and because "it would be `throwing too much stuff yo (sic) the court,'" she should not testify as to her version of events. Appellant also stated that Johnson told her that she should not testify because "pushing my husband was domestic violence." In another affidavit attached in support of her motion, appellant averred that had Johnson properly advised her that she risked deportation if convicted, she would have acted differently. Appellant stated that she would have accepted the plea, and that she "would take the witness stand to tell the judge my story regardless of Mr. Johnson telling me not to be questioned."
 {¶ 7} The State of Ohio ("appellee"), opposed the motion, arguing that it was untimely and that appellant was not unavoidably prevented from filing the motion. Appellee asserted that appellant's decision to decline a plea agreement because she was not aware of deportation consequences is not a basis upon which a court can grant a new trial. In addition, appellee argued that appellant's decision not to testify at trial did not result from ineffective assistance of counsel.
 {¶ 8} On February 25, 2005, the trial court conducted a hearing on the motion. Appellee moved to dismiss the motion as untimely. The trial court stated that it would "not find that the motion was untimely filed," and proceeded with testimony. (Tr. 7.)
 {¶ 9} Appellant testified through an interpreter. According to appellant, Johnson only spoke to her about her immigration status twice. Both times the conversation was similar, in which Johnson asked appellant, "Do you know [if] there's any immigration consequences out of this?" (Tr. 13.) Both times appellant replied that she did not know, and asked Johnson if he knew, to which he replied, "I don't know." (Tr. 13.) Appellant testified that Johnson never told her that deportation would result if she were convicted of domestic violence.
 {¶ 10} On cross-examination, appellant explained that although she and Johnson had discussed the possibility of accepting a plea agreement Johnson never told her that she would be deported if convicted of domestic violence. Appellant testified on redirect examination that if she had known that a conviction for domestic violence would result in deportation, she would have accepted the plea bargain instead of going to trial.
 {¶ 11} Johnson testified on behalf of appellee. He stated that he had previously represented immigrants on criminal matters and depending upon the criminal charge, he "would make them aware of deportation possibilities under the INS code." (Tr. 26.) Johnson stated that he met with appellant at least 12 times on her domestic violence case, and that he believed she understood him at all of the meetings. Johnson testified that during one of the meetings, he discussed the possibility of appellant being deported. According to Johnson, he explained the plea bargain offered to appellant, and informed her that a conviction for disorderly conduct does not fall within the category of deportable offenses.
 {¶ 12} Johnson testified that although she was aware of the terms of the plea bargain and the fact that a conviction for disorderly conduct would not result in deportation, she refused to plead guilty. When asked whether he "explain[ed] to her the possibilities if she were found guilty of the domestic violence charge," Johnson testified that "[i]n my discussions with her during the time that that offer was available, I explained to her — if not every occasion, nearly every occasion, we discussed the immigration consequences that she could face." (Tr. 30.) Johnson believed that she understood him. On cross-examination, Johnston testified that he had told appellant "domestic violence and assault was a deportable offense." (Tr. 45.) Johnson's testimony contained no mention of how he advised appellant regarding testifying in her own defense, and he offered no details of his trial strategy.
 {¶ 13} Philip Miele ("Miele"), the attorney who prosecuted the case against appellant, testified on behalf of appellee. Miele testified that he offered appellant a plea bargain for a reduced charge of disorderly conduct. The only reason disorderly conduct was offered to appellant, according to Miele, was because of the "urgings and persuasions, strong persuasions of defense counsel * * * due to deportation issues." (Tr. 56.)
 {¶ 14} In rebuttal, appellant called a Chinese language expert and interpreter, Wendy Lee ("Lee"). According to Lee, a native Chinese speaker who proficiently understands written English may nevertheless not understand spoken English well. Lee explained that appellant might have misunderstood Johnson when he explained to her that he did not know the immigration consequences because in Chinese, "I don't know" means, "I have not knowledge of and I do not know." (Tr. 64.) On cross-examination, Lee conceded that simply because an individual cannot speak a language does not necessarily mean that the individual does not understand when that language is spoken to her.
 {¶ 15} The trial court determined that the appellant was represented by competent counsel who advised appellant "that a guilty finding at trial would subject her to the possibility of being deported and that it was a risk of going to trial." The trial court also determined that appellant declined the plea bargain in order to go to trial. The trial court overruled appellant's motion for a new trial.
 {¶ 16} Appellant presents the following assignment of error for our review:
The Municipal Court erred when it held that Ms. Lei did not receive ineffective assistance of counsel and found that Ms. Lei knowingly, voluntarily and willfully rejected the plea bargain and waived her right to testify in her own defense because she understood that deportation was a mandatory consequence of a domestic violence conviction.
 {¶ 17} Appellant's assignment of error presents the two-part issue whether she received ineffective assistance of counsel when her attorney allegedly failed to inform her that a conviction would expose her to deportation; and whether she is entitled to a new trial because, as a consequence of counsel's alleged ineffective assistance, appellant's decisions to reject a plea agreement and to refrain from testifying at trial were not made knowingly, voluntarily and willfully.
 {¶ 18} Although several Ohio courts have addressed aliens' ineffective assistance claims when such claims form the basis of a motion to withdraw a guilty plea,[3] our research indicates that no Ohio court has addressed an ineffective assistance-based claim such as that advanced by appellant.
 {¶ 19} The decision to grant or deny a motion for a new trial rests in the sound discretion of a trial court. State v.Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. It is within a trial court's discretion to determine credibility of witnesses when considering testimony in a motion for a new trial. State v. Kirkland (Apr. 9, 1998), 10th Dist. No. 97AP-873. Therefore, a reviewing court will not disturb the decision of a trial court on a motion for a new trial absent an abuse of discretion. Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 20} Moreover, "[t]he decision to grant a motion for new trial is an extraordinary measure which should be used only when the evidence presented weighs heavily against the conviction. It is clear from the language of Crim.R. 33 that a new trial is not to be granted unless it affirmatively appears from the record that a defendant was prejudiced by one of the grounds stated in the rule, or was thereby prevented from having a fair trial. See Crim.R. 33(E)." State v. Samatar, 152 Ohio App.3d 311,2003-Ohio-1639, 787 N.E.2d 691, ¶ 35. (Citations omitted.)
 {¶ 21} Crim.R. 33 governs motions for a new trial.[4]
As it relates to this appeal, Crim.R. 33 states in relevant part:
(A) Grounds
A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
* * *
(5) Error of law occurring at trial;
* * *
(B) Motion for new trial; form, time.
Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered * * * unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial; in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.
 {¶ 22} Crim.R. 33(B) requires a two-step process for filing an untimely motion for a new trial. If a defendant files a motion for a new trial for any reason except newly discovered evidence after the fourteen-day period set forth in Crim.R. 33(B), the defendant must seek leave of court to file a delayed motion.State v. Warwick, 2nd Dist. No. 01CA33, 2002-Ohio-3649 at ¶ 13, citing State v. Mathis (1999), 134 Ohio App.3d 77, 79,730 N.E.2d 410. See, also, State v. Lordi (2002),149 Ohio App.3d 627, 2002-Ohio-5517 at ¶ 25, 778 N.E.2d 605 ("[l]eave must be granted before the merits are reached"). A court may only grant leave when a defendant proves by clear and convincing evidence that she was unavoidably prevented from filing a timely motion.State v. Wilson, 10th Dist. No. 02AP-1350, 2003-Ohio-5892
at ¶ 12. Once a court determines that a defendant was unavoidably prevented from filing a timely motion and grants leave, the defendant must then file the motion for new trial setting forth the substantive grounds thereof. State v. Walden (1984),19 Ohio App.3d 141, 146, 19 OBR 230, 483 N.E.2d 859.
 {¶ 23} Appellee asserts that the trial court lacked jurisdiction to consider appellant's motion for a new trial because it was untimely, and because the trial court did not first issue an order granting appellant leave to file the motion out of rule. We disagree. The trial court found that the motion was not untimely filed, proceeded to hear testimony, and issued a decision and entry on the merits. Thus, we conclude that the trial court implicitly determined that appellant satisfied her burden that she was unavoidably prevented from filing her motion. Moreover an order granting leave is "clearly not a condition to the trial court's authority to grant a motion for new trial."State v. Blankenship (1996), 111 Ohio App.3d 198, 201,675 N.E.2d 1303. Though the court's failure to issue such an order was, "error, [it] did not defeat the court's jurisdiction." Ibid. Because the trial court had jurisdiction to rule on appellant's motion, this appeal is properly before us.
 {¶ 24} We now proceed to a determination of the merits of appellant's assignment of error. A new trial may be granted on one of the grounds contained in Crim.R. 33(A), but may not be granted for any other reason, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial. Crim.R. 33(E).
 {¶ 25} A claim of ineffective assistance of counsel is cognizable in a motion for a new trial pursuant to Crim.R. 33(A)(1). State v. Farley, 10th Dist. No. 03AP-555,2004-Ohio-1781, ¶ 11. But, see State v. Judy (July 23, 1986), 1st Dist. No. C-850796 (recognizing that ineffective assistance of counsel may be addressed in a Crim.R. 33(A)(1) motion but observing that a petition for post-conviction relief pursuant to R.C. 2953.21 may provide a more effective and appropriate vehicle for relief on a claim for ineffective assistance of counsel because the dispositive facts are found outside the record).
 {¶ 26} In order to prevail on a claim for ineffective assistance of counsel, a defendant must satisfy a two-prong test.Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. The first prong requires that the defendant demonstrate that the performance of counsel was deficient.Strickland at 687. This involves a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. A defendant may demonstrate that the conduct of counsel was deficient by identifying acts or omissions that were not the result of reasonable, professional judgment. A court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690.
 {¶ 27} In analyzing the first prong of Strickland, there is a strong presumption that the conduct of counsel falls within a wide range of reasonable professional assistance. Id. at 689. A defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana (1995),350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83. An error by counsel, even if unreasonable under prevailing professional standards, does not warrant setting aside a judgment unless the error affected the outcome of the trial. Strickland, at 691.
 {¶ 28} Under the second prong of Strickland, a defendant must demonstrate that the performance of counsel prejudiced her. Id. This requires showing that, but for the unprofessional errors of counsel, a reasonable probability existed that the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Although a claim for ineffective assistance of counsel comprises two analytical prongs, a court is not required to approach each prong in the same order, or even address both prongs if a defendant makes an insufficient showing on one prong.
 {¶ 29} As discussed above, appellant asserts that her trial counsel's failure to inform her that deportation is a consequence of a domestic violence conviction constitutes ineffective assistance, and because the ineffective assistance prejudiced her, she is entitled to a new trial pursuant to Crim.R. 33(A)(1) and (5).
 {¶ 30} Appellant argues that a criminal defense attorney has a duty to advise clients on the deportation consequences of a conviction. She asserts that her counsel was aware that federal law requires deportation for a conviction for domestic violence but that he failed to discuss the precise issue with her, and failed to adequately determine whether she understood him, given the fact that appellant is not a native speaker of English. She claims that but for counsel's failure to advise her regarding deportation, she would have accepted the plea agreement. She also argues that counsel's ineffective assistance prejudicially affected her decision to not testify on her own behalf. She argues that because she was not fully informed of the consequences of a domestic violence conviction, her decision not to testify was not knowing, intelligent or voluntary.
 {¶ 31} In response, appellee argues that appellant was not denied a fair trial pursuant to Crim.R. 33(A)(1), and that an error of law did not occur at trial pursuant to Crim.R. 33(A)(5). According to appellee, because appellant was adequately advised of the consequences of domestic violence and disorderly conduct convictions, appellant's decision to forgo the plea agreement and to exercise her right to a trial cannot be considered the result of ineffective assistance of counsel. Appellee also argues that the decision by a defendant to not testify at trial is a valid trial strategy.[5]
 {¶ 32} We note initially that, "criminal defense lawyers ordinarily are not required to inform defendants of collateral consequences." Creary, supra, at ¶ 8. A collateral consequence is a consequence that is not definite, immediate, or automatic.State v. Yun, 10th Dist. No. 04AP-494, 2005-Ohio-1523 at ¶ 12. See, also, State v. Lambert (May 25, 1999), 10th Dist. No. 98AP-941. Deportation is considered a collateral consequence of a criminal conviction. Yun at ¶ 12. As we stated in Yun:
Deportation remains beyond the control and responsibility of the court in which that conviction was entered and it thus remains a collateral consequence thereof. U.S. v. Amador-Leal
(C.A.9, 2002), 276 F.3d 511, 516.
Immigration consequences will not surface until the court's sentence has been served. Before a defendant can be deported, the [immigration officials] must follow certain administrative procedures and must exercise its discretion to commence deportation proceedings. The proceedings are wholly independent of the court that imposes sentence. Deportation is a "purely civil action" separate and distinct from a criminal proceeding.I.N.S. v. Lopez-Mendoza (1984), 468 U.S. 1032, 1038,104 S.Ct. 3479, 82 L. Ed.2d 778.
Id. at ¶ 12-13. Though the court must inform defendants of deportation consequences prior to accepting a plea of guilty or no contest, pursuant to R.C. 2943.031, no statutory or decisional authority requires trial counsel to advise a defendant of the civil, collateral consequence of deportation for purposes of the defendant's decision as to whether to accept a plea agreement or to exercise her constitutional right to trial, or whether to testify at trial.
 {¶ 33} The ultimate basis of the trial court's decision to deny appellant's motion was its specific finding that Johnsondid properly advise appellant of the deportation consequences of a conviction. At the hearing on her motion appellant had the opportunity to fully present her version of the substance of her conversations with Johnson. However, as the court stated in its judgment entry, after considering appellant's evidence, as well as that presented by appellee, it found that Johnson had not rendered ineffective assistance and that he had advised appellant that a guilty verdict would subject her to the possibility of deportation. The court also found that, despite counsel's advice with respect to deportation, appellant "was adamant about not taking a negotiated plea" and that she was determined to proceed to trial. It was within the trial court's discretion to assess the credibility of the witnesses' testimony. Kirkland, supra. We find no abuse of discretion in the court's determination that there was no ineffective assistance of counsel. Therefore, appellant has not met the first prong of Strickland.
 {¶ 34} Although appellant declined the plea bargain and did not testify at trial, she exercised her rights to a trial before an impartial finder of fact. Appellant has not demonstrated any irregularity in the proceedings of the trial court that prevented her from having a fair trial, or an error of law occurring at trial.
 {¶ 35} Accordingly, we conclude that the trial court did not abuse its discretion by overruling appellant's motion for a new trial. We therefore overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Petree and Brown, JJ., concur.
[1] The Immigration and Nationality Act ("Act"), as amended, states in relevant part:
(a) Classes of deportable aliens. Any alien * * * in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
* * *
(2) Criminal Offenses.
* * *
(E) Domestic violence, stalking, and child abuse.
(i) Any alien who at any time after admission is convicted of a crime of domestic violence * * * is deportable.
Section 1227(a)(2)(E)(i), Title 8, U.S. Code. The Act subjects an alien to deportation if the alien falls within certain statutorily defined categories, such as violation of immigration status, conviction by a state or federal court for specific criminal offenses, or failure to register with immigration officials. The Act permits an alien to seek a waiver of deportation, or cancellation of removal, provided the alien can meet criteria defined by the statute. See, generally, Sections 1227(a)(7), 1229(b), Title 18, U.S. Code.
[2] See State v. Cowan, 101 Ohio St.3d 372, 805 N.E.2d 1085,2004-Ohio-1583 (municipal courts are without jurisdiction to entertain petitions for post-conviction relief because such authority is not granted in Chapter 1901 of the Revised Code).
[3] See, generally, State v. Arvanitis (1986),36 Ohio App.3d 213, 522 N.E.2d 1089 (court considered ineffective assistance claim of alien with respect to vacating guilty plea); State v.Yanez, 150 Ohio App.3d 510, 782 N.E.2d 146, 2002-Ohio-7076 at ¶41-43 (court considered role of trial counsel in advising alien-defendant in entering a guilty plea); State v. Creary,
8th Dist. No. 82767, 2004-Ohio-858 (alien-defendant entitled to hearing on motion to withdraw guilty plea due to ineffective assistance of trial counsel by misstating deportation law).
[4] Although R.C. 2945.79 also governs motions for a new trial, Crim.R.33 is a substantive duplication of the statute and has superseded it. See State v. Reed (1981), 65 Ohio St.2d 117,418 N.E.2d 1359, 19 O.O.3d 311.
[5] Appellee also asserts that appellant waived any argument regarding her decision not to testify at her trial because she did not testify on this matter at the hearing on her motion for a new trial. Although a review of the record reveals that neither appellant nor appellant's trial counsel testified at the motion hearing regarding appellant not testifying in her own defense at trial, we note that appellant asserted this issue in her affidavits in support of her motion at the trial court, and therefore may raise the issue for our review on appeal.