IN RE LONG.

(No. 83AP-1157—Decided June 25, 1985.)

*Michael Miller,* prosecuting attorney, and *Susan E. Day,* for appellee state of Ohio.

*James Kura,* county public defender, and *Allen V. Adair,* for appellant.

MOYER, J. This matter is before us on the appeal of appellant, Danny A. Long, a minor, from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, revoking his parole and remanding him to the Ohio Department of Youth Services ("department") to be held in an institution. On July 2, 1982, Long was found to be a delinquent minor when he admitted to two counts of receiving stolen property. Long was permanently committed to the department at his dispositional hearing on July 6, 1982, was twice refused early release,

and was released on parole from the institution on January 14, 1983.

On January 24, 1983, Long admitted to a charge of disorderly conduct. Disposition was continued for one week. At the dispositional hearing on January 31, 1983, a probation officer filed a motion seeking revocation of Long's parole. This motion had been served on Long on January 28, 1983. At the time of the dispositional hearing, counsel for Long requested and was given an additional week to prepare for the hearing, on the ground that she had not received a copy of the motion. At the hearing on February 7, 1983, which considered both the motion for revocation of parole and the disorderly conduct charge, the referee found that Long had violated the terms and conditions of his parole, and ordered that he be returned to the department. Long filed objections to the report and recommendation of the referee, alleging that disorderly conduct did not constitute a serious violation of the terms and conditions of his parole. The juvenile court sustained these objections and ordered that Long be returned to parole status.

Long was arrested and made an admission to an unruly charge of curfew violation on June 20, 1983. At the dispositional hearing on June 24, 1983, a new motion to revoke Long's parole was denied on the ground that, if disorderly conduct was not a sufficiently serious violation for purposes of revocation of parole, then neither was a curfew violation.

Long was charged with another curfew violation to which he entered an admission on August 17, 1983. After this hearing, the referee requested the filing of a third motion seeking parole revocation. The dispositional hearing was on August 31, 1983, at which time the referee ordered that Long's parole be revoked and he be remanded to the department. Prior to this hearing, Long had received a copy of the motion to revoke parole and was notified of the time and date of the hearing. He was also represented by counsel at the hearing. The prosecutor's office was not represented at this hearing; the questioning was conducted from the bench; testimony was unsworn and there was no cross-examination. Defense counsel objected, stating that he had understood this to be only a first hearing on the motion for revocation and that the proceedings did not comply with due process standards. A further evidentiary hearing was not set.

Subsequent to the filing of objections, a hearing was scheduled for October 18, 1983 before the juvenile court. Before that date, Long was also charged with soliciting in violation of R.C. 2907.24, a misdemeanor of the third degree, to which he entered an admission. The trial court placed Long in the Y.E.S. program for a thirty-day period of evaluation prior to the final disposition. The final dispositional hearing was conducted on November 22, 1983 and included a Y.E.S. report, which recommended that Long be returned to the department for institutionalization. In a decision rendered November 28, 1983, the trial court ordered that Long's objections be overruled; that his parole be revoked; and that he be remanded to the department for institutionalization. Long raises the following two assignments of error:

"1. Parole revocation proceedings conducted in the juvenile court did not meet the due process standards set forth in *Morrisey* [sic] v. *Brewer,* 408 U.S. 471.

"2. The juvenile court erred in revoking appellant's parole as a curfew violation did not constitute a serious violation of the terms of his release."

We are aware of no case that states the standard to be applied in a case such as the one before us.

In support of his first assignment of error, Long argues that the parole

revocation proceedings to which he was subjected did not meet the due process standards as set forth in the case of *Morrissey* v. *Brewer* (1972), 408 U.S. 471. That case states the due process standards to be afforded an adult subject to revocation of his parole. The requirements in *Morrissey* are:

"* * * (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses * * * [absent good cause to dispense with confrontation]; (e) a 'neutral and detached' hearing body * * *; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. * * *" *Id.* at 489.

Ohio has complied with the directives in *Morrissey,* by instituting the Adult Parole Authority system for adult parolees; in addition, the *Morrissey* procedures for revocation of parole for adults are mandated by R.C. 2967.15, as well as appearing in Ohio case law. The issue presented by this appeal is whether the full panoply of procedures set forth in *Morrissey* is also applicable to cases of juvenile parole revocation, or whether the juvenile court system, embodying as it does different concerns and values than those of the adult criminal system, has different requirements for parole revocation.

R.C. 2151.38(C) establishes the parole provisions for juveniles. The provisions relevant to parole revocation are as follows:

"* * * If a child is released on parole or is assigned subject to specified terms and conditions and the court of the county in which the child is placed has reason to believe that the child has not deported himself in accordance with any post-release terms and conditions established by the court in its journal entry, the court of the county in which the child is placed may, in its discretion, schedule a time for a hearing on whether the child violated any of the post-release terms and conditions. If the court of the county in which the child is placed conducts a hearing and determines at the hearing that the child violated any of the post-release terms and conditions established in its journal entry, the court may, if it determines that the violation of the terms and conditions was a serious violation, order the child to be returned to the department of youth services for institutionalization or in any case, may make any other disposition of the child authorized by law that the court considers proper. If the court of the county in which the child is placed orders the child to be returned to a department of youth services institution, the child shall remain institutionalized for a minimum period of three months."

It is apparent from the record before us that the juvenile court did schedule a hearing as required by statute to determine whether Long had violated the terms and conditions of his parole. Although Long argues the inadequacy of the dispositional hearing and claims that a further evidentiary hearing should have been held, R.C. 2151.38 refers to only a single hearing. Having determined that the requirements of R.C. 2151.38 were met, we next decide whether the requirements of *Morrissey, supra,* were also met, or whether such requirements are even applicable in juvenile parole revocation.

The recent United States Supreme Court case of *Schall* v. *Martin* (1984), 81 L.Ed. 2d 207, is helpful in a consideration of the extent to which due process requirements apply to juvenile offenders. In *Schall,* a state law authorizing pretrial detention of accused juvenile delinquents based upon a finding that there was a " 'serious risk' " that the juvenile " 'may before the return date commit an act which if committed by an adult would constitute a crime' " (*id.* at 211) was held not to violate the Due Pro-

cess Clause, due to the legitimate state objectives involved and the adequate procedural protections afforded the pretrial detainees. As the court in *Schall* stated, "[t]here is no doubt that the Due Process Clause is applicable in juvenile proceedings. 'The problem,' we have stressed, 'is to ascertain the precise impact of the due process requirement upon such proceedings.' *In re Gault* [1967], 387 U.S. 1 [40 O.O.2d 378] * * *." *Id.* at 216.

The court in *Schall* acknowledged the legitimate and compelling state interests inherent in protecting the community from juvenile crime and also in protecting the juvenile from the consequences of his or her own crimes. The court recognized that juveniles have an interest in freedom, as do adults: "* * * But that interest must be qualified by the recognition that juveniles, unlike adults, are always in some form of custody. * * * Children, by definition, are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as parens patriae. * * *" *Id.* 217-218. For these reasons, the juvenile's liberty interest may often be subordinated to the *parens patriae* responsibility of the state. *Id.* at 218. The specific procedural requirements discussed in *Schall* differ somewhat from those in the matter before us, for the reason that *Schall* was concerned with a pretrial detention situation, as opposed to the parole revocation procedures herein. However, *Schall*'s discussion of the peculiar character of the juvenile system as it affects due process rights is pertinent to the matter before us.

On the record before us, we determine that the state of Ohio has made adequate statutory provision for the procedure to be followed in juvenile parole revocation proceedings, and that these requirements were met with respect to Danny Long. Further, a review of the record also discloses that there was substantial compliance with the procedures set forth in *Morrissey, supra,* even though there is no specific requirement that each of these steps be taken in such a juvenile proceeding. It is undisputed that Long received notice of each of the claimed violations of parole, including the final curfew violation, and a copy of the motion to revoke parole. It is also undisputed that he was notified of the times and dates of the hearings. Long's claim that he did not receive written notice of the violation of parole, based upon the fact that the trial court appears to have considered Long's past record in coming to its decision, does not stand up, as the trial court order states that the current curfew violation is the basis of the decision and Long admitted that he committed that violation.

Long also claims that the evidence used against him was not disclosed to him. R.C. 2151.38 does not mandate a full-scale adversary adjudicatory hearing in juvenile parole revocation cases. Furthermore, as the evidence used against Long consisted of the current and past curfew violations, which he had admitted, and the results of his participation in the Y.E.S. program evaluation, he was not unaware of the evidence before the trial court. As the Supreme Court observed in *Morrissey, supra,* at 490, "* * * [o]bviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime."

We next consider Long's opportunity to be heard in person and present witnesses and documentary evidence in view of *Morrissey.* Long was present at the hearing and was represented by counsel, who was invited by the referee to set forth Long's position and his facts in regard to both the curfew offense and the parole revocation motion. The presentation of witnesses and documentary evidence, as well as the confrontation and cross-examination of adverse wit-

nesses, are within the discretion of the parole authority. See *United States, ex rel. Vitoratos,* v. *Campbell* (N.D. Ohio 1976), 410 F. Supp. 1208, at 1213, where it was stated that the "* * * Court is entitled to rely on the face of the record * * *" in parole revocation proceedings. Also, as stated above, presentation of evidence, witnesses, confrontation and cross-examination are not required by statute for juvenile parole hearings.

The remaining requirements of *Morrissey, supra, i.e.,* the "neutral and detached" hearing body, and the written statement by the factfinders as to the evidence relied upon and reasons for revoking parole, were also clearly present in the matter before us, for several previous parole revocation motions against Long were overruled by the juvenile court before Long was finally returned to the custody of the department, thus demonstrating the trial court's neutrality; and, the juvenile court's order constitutes the proper and adequate written statement by the factfinder.

For the preceding reasons, the first assignment of error is not well-taken and is overruled.

In his second assignment of error, Long alleges that the court erred in revoking his parole because a curfew violation did not constitute a serious violation of the terms of his release. He also argues that the only appropriate penalty for his curfew violation would have been the penalty to be afforded for a new curfew violation, rather than his return to the department to serve the rest of his original commitment. R.C. 2151.38 leaves the determination of whether the violation of the terms and conditions of parole was a serious violation to the discretion of the trial court. The decision of the trial court which is before us does not constitute an abuse of discretion, either as regards the instant curfew violation, or in light of Long's past record of violations. Furthermore, under that statutory provision, the juvenile parolee is still committed to the department and is still subject to its terms and conditions until his parole is successfully terminated.

In *Vitoratos, supra,* the adult parole revocation process resulted in the defendant serving a longer sentence than he would have received had he been tried and convicted of the current charge alone. The court therein stated, at 1214, that revocation of parole is a deprivation of only a conditional freedom, which is dependent upon the parolee observing the terms of his parole. The court also stated that a parolee, upon revocation of parole, is returned to serve the remainder of his original sentence, not a new sentence. *Id.* The decision of the trial court herein, as to the seriousness of the violation of the terms of parole and to return Long to the department for institutionalization, was within the court's discretion. The second assignment of error is without merit and is overruled.

For the reasons set forth above, the two assignments of error are overruled, and the decision of the trial court is affirmed.

*Judgment affirmed.*

REILLY, P.J., and STRAUSBAUGH, J., concur.