AMENDED OPINION
{¶ 1} Defendant, Sophal Prom, appeals from her conviction for Murder, R.C. 2903.02(A), and the sentence imposed on her pursuant to law, which resulted from a negotiated plea of guilty that Prom entered in exchange for the State's agreement to dismiss a charge of Aggravated Murder, R.C. 2903.01, for which Prom had been indicted.
 {¶ 2} Prom presents three assignments of error on appeal. The first and second assignments concern the trial court's decision to accept Prom's guilty plea. Prom argues that the court's mistake in informing her that she was subject to post-release control as a consequence of a conviction for Murder was error that renders her guilty plea involuntary. We agree that the court's error is reversible, and so we will vacate Prom's conviction and remand the case for further proceedings.
 {¶ 3} The charge of Murder to which Prom entered a guilty plea included a firearm specification. Pursuant to R.C 2929.14(D)(1)(a)(ii), the specification carried a three-year mandatory term of incarceration. The mandatory sentence for Murder is a term of incarceration of from fifteen years to life. R.C. 2929.02(B). Therefore, the maximum penalty for the offense to which Prom entered a guilty plea was from eighteen years to life.
 {¶ 4} The trial court explained the maximum penalty to Prom, and that she might be eligible for release in eighteen years, at the earliest. Prom acknowledged her understanding of that matter. (T. 25, 29). The court also advised Prom, in the following colloquy:
 {¶ 5} "By the Court: And once you're released from prison, you're going to be supervised by the Adult Parole Authority in Ohio, under a provision known as post-release control. And under that provision, that will be for at least five years. And you will be required to obey their rules. And if you fail to obey their rules, they can make you go back to prison for up to half of the original sentence.
 {¶ 6} "So, if you were to serve 18 years in prison, you could end up going back to prison for another nine years, if you don't obey the rules of the Adult Parole Authority, and that would be in time increments, or segments of up to nine months at a time. You understand that? Is that confusing to you:
 {¶ 7} "By Miss Prom: No.
 {¶ 8} "By the Court: You understand?
 {¶ 9} "By Miss Prom: Yes.
 {¶ 10} "By the Court: If after you're released from prison, if you ever are, and I can't promise you that you will ever be released from prison. You commit a new crime, you would have to go back to prison for the new crime and you would also serve, in addition, any time that you had not served on post release control — successfully. You understand that? In other words, if you were out of prison for a year, and you committed a new crime, you'd have to serve an additional four years in prison, which would of been the time that you would of served on post release control. Do you understand that?
 {¶ 11} "By Miss Prom: Yes.
 {¶ 12} "By the Court: If you commit a new crime when you have less than a year to serve on post release control, you would have to go back to prison for the new crime, and serve an additional year, for failing to successfully complete post release control. Do you understand that?
 {¶ 13} "By Miss Prom: Yes." (T. 29-31).
 {¶ 14} The advice the court gave Prom concerning post-release control and its requirements and consequences also appears in the written Plea of Guilty and Jury Waiver that Prom signed.
 {¶ 15} Post-release control is defined by R.C. 2967.01(N) to be "a period of supervision by the adult parole authority after a prisoner's release from imprisonment that includes one or more post-release control sanctions imposed under section 2967.28 of the Revised code." R.C2967.28(B) identifies the felonies to which post-release control requirements apply.
 {¶ 16} A court that imposes a prison term for a felony to which post-release control applies must "include in the offender's sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment." R.C. 2929.14(F).Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171, characterized post-release control as a "part of an offender's sentence." Id., at 513.
 {¶ 17} A court that imposes a sentence that includes post-release control must notify the offender of the post-release control requirement at sentencing, and that "if the offender violates that supervision or condition of post-release control . . . the parole board may impose a prison term, as a part of the sentence, of up to one-half of the stated prison term originally imposed on the offender." R.C. 2929.19(B)(3)(e). That maximum is repeated in R.C 2967.28(E)(3), which also provides that the term that may be imposed for each constituent violation of that cumulative term "shall not exceed nine months."
 {¶ 18} These statutory requirements don't apply to a proceeding on a plea of guilty or no contest, at least not directly. However, as discussed below, they affect the determinations that Crim.R. 11(C) requires the court to make concerning a defendant's understandings when the court accepts a plea of guilty or no contest. It appears that the trial court's advice to Prom about post-release control was intended to satisfy Crim.R. 11(C).
 {¶ 19} Prom entered a plea of guilty to Murder, R.C. 2903.02. Per R.C. 2967.01(E), which defines "parole," a prisoner who is serving a prison term for Murder remains subject upon release from confinement to parole requirements imposed under terms and conditions prescribed by the Adult Parole Authority. Ohio Adm. Code 5120:1-1-12 provides that the term of any period of parole obtained after a prisoner's release from confinement is a matter committed to the parole board's discretion. Therefore, Prom is not eligible for post-release control, and the trial court could not impose that requirement as a part of Prom's sentence, as the court told Prom it would.
 {¶ 20} The trial court erred when it told Prom that it would impose the post-release control as a part of Prom's sentence, and when it later imposed post-release control as a part of Prom's sentence. The provision appears in a judgment entry of conviction the court journalized on December 13, 2001. Realizing its error, on that same date the court entered an Amended Judgment Entry of Conviction Nunc Pro Tunc that contains no post-release control requirement.
 {¶ 21} Crim.R. 36 permits correction of clerical mistakes in judgments. It is questionable whether the variance between the two journalized sentencing entries represent a correction of a mere clerical error. Prom's complaint is not about that, however. Prom's complaint is that the court's oral advice at the plea hearing misled her to an extent that her guilty plea was rendered involuntary.
 {¶ 22} Pleas of guilty or no contest are valid only when they are knowing, intelligent, and voluntary. Boykin v. Alabama (1969),395 U.S. 238, 89 S.Ct. 1709. Failure on any of those points renders a resulting conviction unconstitutional. State v. Engle, 74 Ohio St.3d 525,1996-Ohio-179.
 {¶ 23} Crim.R. 11(C) was adopted to ensure that pleas of guilty or no contest are valid. "Adherence to the provisions of Crim.R. 11(C)(2) requires an oral dialogue between the trial court and the defendant which enables the court to determine fully the defendant's understanding of the consequences of his plea of guilty or no contest." State v. Caudill
(1976), 48 Ohio St.2d 242, paragraph two of the syllabus.
 {¶ 24} One of the consequences of a guilty plea is the penalty that may be imposed. State v. Corbin, 141 Ohio App.3d 381, 2001-Ohio-4140. In that connection, Crim.R. 11(C)(2) requires the court to first address a defendant who would enter a guilty plea, personally, and determine, inter alia, that the defendant is making the plea "with (an) understanding of . . . the maximum penalty involved . . ."
 {¶ 25} Compliance with Crim.R. 11(C)(2) need not be exact; substantial compliance is sufficient. State v. Caplinger (1995),105 Ohio App.3d 567. The test is whether an error the court committed so prejudiced the defendant that she would not have pled guilty had the error not been made. Id. Substantial compliance is not shown where the court gives the defendant incorrect information on what the maximum sentence may be. State v. Carroll (1995), 104 Ohio App.3d 372.
 {¶ 26} R.C. 2929.14(F) provides that a post-release control requirement is a part of an offender's "sentence," a point confirmed byWoods v. Telb. The sentence is, of course, a penalty. Crim.R. 11(C)(1)(a) requires the court to determine that the "defendant is making the plea . . ., with (an) understanding . . . of the maximum penalty involved."
 {¶ 27} By erroneously advising Prom that post-release control requirements are mandatory in her case, and what terms of imprisonment might be imposed for their violation, the court inadvertently understated the maximum penalty that might apply to any re-incarceration after Prom's release. If Prom is ever released, the more onerous potential penalties of parole arising from Prom's life sentence instead apply if she is later re-incarcerated. That's not to say that the court was required to give Prom any advice at all concerning parole; it wasn't, and courts rarely if ever do. However, by delving into these inapplicable post-release control penalties in a mistaken effort to comply with Crim.R. 11(C), as it implicates the statutory requirements applicable to post-release control, the court inadvertently created a Crim.R. 11(C) problem.
 {¶ 28} Substantial compliance might arise out of an omission, but it's far more difficult to find with respect to an affirmative misstatement, especially one that understates the penalty involved. Statev. Carroll. That is underscored where the error occurred both in the written plea waiver and the court's oral colloquy with the defendant, both of which happened here.
 {¶ 29} We find that the trial court erred when it accepted Prom's guilty plea when, in consequence of the court's erroneous advice to her concerning post-release control, Prom necessarily was unaware of the maximum penalty to which she was exposed by her plea. Prom's first and second assignments of error are sustained.
 {¶ 30} Prom's third assignment of error alleges ineffective assistance of counsel, a claim that arises from an Anders brief that Prom's prior appellate counsel filed which failed to take account of the trial court's error in accepting Prom's guilty plea. Our determination of Prom's first and second assignments of error requires us to conclude that appellate counsel's performance was deficient and that her ineffective assistance of counsel claim is with merit. Prom's third assignment of error is therefore sustained.
 Conclusion {¶ 31} Having sustained Defendant-Appellant's three assignments of error, the trial court's order accepting appellant's plea of guilty is reversed, and the judgment of conviction and sentence imposed thereon are vacated. This cause is remanded for further proceedings consistent with this opinion. This court's prior judgment dated August 26, 2002 is vacated pursuant to App.R. 26(B)(9).
WALSH, P.J., AND POWELL, J., Concur.
Grady, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.