DECISION.
{¶ 1} Defendant-appellant Jason Baker pled guilty to murder and an accompanying gun specification. He received a sentence of 18 years' to life imprisonment. Baker has appealed, alleging both that his plea was not voluntary because he was not correctly informed of the maximum penalty he faced and that he received ineffective assistance of counsel.
 Murder and Post-Release Control {¶ 2} Before accepting Baker's guilty plea, the trial court conducted a detailed Crim.R. 11 colloquy. The trial court told Baker that he faced 18 years' to life imprisonment. It also stated, "Do you understand that after any prison term you could be placed on what is called post-release control supervision by the Parole Board for five years?"
 {¶ 3} Baker argues that post-release control was mandatory for his crime, and that by using the word "could," the trial court mistakenly informed him that post-release control was discretionary. As a result, Baker alleges, he did not understand the true maximum penalty he faced.
 {¶ 4} But because the offense of murder is not subject to a period of post-release control, Baker is incorrect.
 {¶ 5} Several provisions of the Revised Code outline what offenses are subject to either mandatory or discretionary post-release control.[1] Offenders convicted of a first-degree felony, a second-degree felony, a felony sex offense, or a third-degree felony "that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person" are subject to a mandatory period of post-release control.[2] Offenders convicted of and sentenced for a third-, fourth-, or fifth-degree felony other than those just described are subject to a discretionary period of post-release control.[3]
 {¶ 6} Baker was indicted for murder, a special felony. As a special felony, this offense was not subject to a period of post-release control. Rather, an offender convicted of murder may become eligible for parole after the expiration of the minimum prison term.[4]
 {¶ 7} Having concluded that Baker could not have been placed on post-release control, we must now determine whether the trial court's statement regarding the possibility of post-release control misinformed Baker of the maximum penalty and rendered his plea involuntary.[5] We note that Baker is solely attacking the voluntary nature of his plea, not the sentence imposed, and that a sentence imposed for the offense of murder is not subject to appellate review pursuant to R.C. 2953.08(D)(3).
 {¶ 8} We are mindful that, when conducting a plea colloquy with a defendant, the trial court must substantially comply with the nonconstitutional requirements of Crim.R. 11(C)(2)(a), such as the maximum penalty involved.[6] "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving."[7]
 Baker's Plea Was Voluntary {¶ 9} The Twelfth Appellate District addressed this issue inState v. Prom and determined that a trial court's incorrect reference to post-release control misinformed the defendant of the maximum penalty faced.[8]
 {¶ 10} Prom pled guilty to murder and was told by the trial court during the plea colloquy that she faced up to five years of post-release control.[9] The Twelfth Appellate District first explained that an offender convicted of murder is subject to parole, rather than post-release control.[10] It then stated that "[b]y erroneously advising Prom that post-release control requirements are mandatory in her case, and what terms of imprisonment might be imposed for their violation, the court inadvertently understated the maximum penalty that might apply to any re-incarceration after Prom's release. If Prom is ever released, the more onerous potential penalties of parole arising from Prom's life sentence instead apply if she is later re-incarcerated. That's not to say that the court was required to give Prom any advice at all concerning parole; it wasn't, and courts rarely if ever do."[11] The court vacated Prom's plea after concluding that "Prom necessarily was unaware of the maximum penalty to which she was exposed by her plea."[12]
 {¶ 11} The Fourth Appellate District reached the opposite conclusion in State v. Hamilton.[13] Hamilton pled guilty to aggravated murder. The trial court informed Hamilton of the possibility of parole and further told him that he would be subject to five years of post-release control if he were ever released from prison.[14] Relying on the trial court's reference to post-release control, Hamilton argued on appeal that his plea was involuntary because he was not informed of the actual maximum penalty he faced.
 {¶ 12} The Fourth Appellate District concluded that the trial court had complied with Crim.R. 11(C), stating that "[t]he court's extraneous pronouncement regarding post-release control [did] not misstate the maximum penalty for aggravated murder. Because parole is not part of an offender's sentence, the maximum penalty is imprisonment for life."[15] The court further stated that "[a] defendant facing a life sentence is necessarily aware of the maximum penalty — life in prison. Although a possibility of parole exists, this does not mean that the defendant will be released from prison, since there is no guarantee that a defendant will receive parole."[16]
 {¶ 13} We agree with the reasoning of the Fourth Appellate District in Hamilton. In the case sub judice, the trial court informed Baker that he faced 18 years' to life imprisonment. Life imprisonment was the maximum sentence that Baker could have received. The trial court's incorrect reference to post-release control did not detract from this. Even if Baker mistakenly believed that he "could be" released on post-release control, hewas still aware that he potentially faced life imprisonment.
 {¶ 14} The trial court's statements concerning post-release control in no way added to the penalty Baker faced, nor did they convey to Baker that he had a right to early release.[17]
Further, the record contains no indication that Baker would not have pled guilty but for the trial court's references to post-release control.[18] Under these circumstances, the trial court's statements concerning post-release control were not prejudicial.
 {¶ 15} Moreover, the trial court need not have informed Baker of the possibility of parole. Parole was not a part of Baker's sentence. And as with post-release control, there is no guarantee that Baker will be released from prison and receive parole. The record demonstrates that Baker was aware of the maximum sentence he faced, life imprisonment.
 {¶ 16} We conclude that the trial court substantially complied with Crim.R. 11(C)(2)(a)'s requirement that the court inform the offender of the maximum penalty faced. It also complied with Crim.R. 11(C) in all other regards, and Baker entered his plea knowingly, intelligently, and voluntarily.
 {¶ 17} We overrule Baker's first assignment of error.
 Ineffective Assistance {¶ 18} In his second assignment of error, Baker argues that he received ineffective assistance of counsel. Baker argues that his counsel would not allow him to pursue a self-defense argument at trial and that his counsel pressured him into pleading guilty after advising Baker that he could not win at trial.
 {¶ 19} To succeed on a claim of ineffective assistance, a defendant must show that counsel's performance was deficient and that the defendant was prejudiced by this deficient performance.[19] In the context of a plea, it must also be shown that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."[20]
 {¶ 20} Baker's allegations of ineffective assistance are based upon conversations and communications between Baker and his counsel. These communications are not a part of the record, and we are unable to review them in this appeal. "Any allegations of ineffectiveness based on facts not appearing in the record should be reviewed through the postconviction remedies of R.C. 2953.21."[21] Accordingly, we overrule Baker's second assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Gorman, P.J., and Sundermann, J., concur.
[1] See R.C. 2967.28(B) and (C); Am. Sub. H.B. No. 137's amendment to R.C. 2929.14(F).
[2] R.C. 2967.28(B).
[3] R.C. 2967.28(C).
[4] See R.C. 2967.13(A)(1).
[5] Although not relevant to the present case, we note that the General Assembly has recently amended several Revised Code provisions concerning post-release control. These amendments followed the Ohio Supreme Court's decision in Hernandez v.Kelly, which held that the Adult Parole Authority may not place an offender on post-release control if the trial court did not notify the offender of the possibility of post-release control and incorporate post-release control into the sentencing entry.108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 32. Following the recent amendments, contained in Am. Sub. H.B. No. 137, a trial court's failure to inform an offender of the possibility of post-release control does not prevent the offender from being placed under post-release-control supervision. For a more detailed explanation, see Am. Sub. H.B. No. 137's amendments to R.C. 2929.19 and 2929.191.
[6] State v. Gulley, 1st Dist. No. C-040675, 2005-Ohio-4592, ¶ 17.
[7] Id., citing State v. Nero (1990), 56 Ohio St.3d 106, 108,564 N.E.2d 474.
[8] State v. Prom, 12th Dist. No. CA2002-01-007,2003-Ohio-6543, ¶ 29.
[9] Id. at ¶ 5.
[10] Id. at ¶ 19.
[11] Id. at ¶ 27.
[12] Id. at ¶ 29.
[13] State v. Hamilton, 4th Dist. No. 05CA4, 2005-Ohio-5450.
[14] Id. at ¶ 4.
[15] Id. at ¶ 13.
[16] Id. at ¶ 17.
[17] See id. at ¶¶ 17-18.
[18] See id. at ¶ 18.
[19] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[20] Hill v. Lockhart (1985), 474 U.S. 52, 59,106 S.Ct. 366.
[21] State v. Coleman, 85 Ohio St.3d 129, 134, 1999-Ohio-258,707 N.E.2d 476.