OPINION
{¶ 1} Defendant-appellant, Ralph E. Clark, appeals his conviction and sentence in the Ashtabula County Court of Common Pleas following the entry of a negotiated guilty plea of Aggravated Murder with Gun Specification. For the following reasons, we affirm Clark's conviction and reverse his sentence, in part, and remand this cause for re-sentencing in respect to the financial sanctions imposed.
 {¶ 2} Early on the morning of May 7, 2005, Ashtabula Police Officers received a dispatch of a burglary in progress at 4227 Park Avenue, in Ashtabula, the *Page 2 
residence of Clark's estranged wife, Carolyn Clark. The police found Carolyn unconscious, severely beaten at the back of her head with the butt of a rifle. Carolyn died shortly after being transported to the Ashtabula County Medical Center. Clark was arrested later that day at his home on 1031 East Morgan Road, in Jefferson, Ohio.
 {¶ 3} On May 13, 2005, Clark was indicted on one count of Aggravated Murder with Gun Specification, an unclassified felony in violation of R.C. 2903.01 and R.C. 2941.145, two counts of Murder with Gun Specification, unclassified felonies in violation of R.C. 2903.02 and R.C. 2941.145.
 {¶ 4} On January 13, 2006, Clark signed a negotiated Plea of Guilty to Aggravated Murder with a Three Year Gun Specification, in violation of R.C. 2903.01 and R.C. 2941.145. The trial court dismissed a second specification to the Aggravated Murder charge and the two counts of Murder. In the plea agreement, Clark acknowledged "that the maximum penalty for the crime of aggravated murder is life imprisonment without parole * * * and that the sentence for the three year gun specification shall be served consecutively to the sentence imposed for aggravated murder." The agreement further provides: "I may have a period of post-release control for five (5) years following my release from prison. If I violate a post-release control sanction imposed upon me, * * * the Parole Board may impose * * * a prison term, provided that the prison term cannot exceed nine months and the maximum cumulative prison term so imposed for all violations during the period of post-release control cannot exceed one-half of the stated prison term originally imposed upon me."
 {¶ 5} At Clark's change of plea hearing, the prosecution and defense counsel jointly recommended a sentence of life imprisonment, with parole eligibility after *Page 3 
twenty-five years plus an additional three years for the Gun Specification. The trial judge, addressing Clark directly, explained: "if you're placed on post-release control and if you violate any of those conditions of post-release control, you'd be charged with a violation and you would have a hearing before the Parole Board, and if it were determined at that hearing that you had violated one or more conditions of your post-release control, you could have a new prison term imposed of up to nine months in duration; however, the total of all such new prison terms could not exceed one-half of your original sentence."
 {¶ 6} On January 18, 2006, Clark's sentencing hearing was held. The trial court sentenced Clark to life imprisonment with eligibility for parole after twenty-eight years.[1] As to the circumstances of Clark's parole, the trial judge addressed Clark as follows: "Normally, we use a sentencing form at the Sentencing Hearing and it talks about post-release control. I'm going to use this form today and I'm going to read this form to you, but if the defendant were to be released, after 28 years, he would certainly be under certain conditions that they call parole, it's not called post-release control. But I'm going to use this form and I'm going to read it to you, Mr. Clark, because what's in this form would apply to you. If you're released from prison, and I'm going to change the word "after" to "if" because that's not a certainty. If you're released from prison, you will * * * have a period of post-release control, or parole, for at least five years following your release from prison. If you violate a post-release controlled sanction imposed upon you * * * the Parole Board may impose * * * a prison term, provided that the prison term cannot exceed nine months, and the maximum *Page 4 
cumulative prison term so imposed for all violations during the period of post-release control cannot exceed one-half of the stated prison term originally imposed upon you."
 {¶ 7} The trial judge also addressed Clark regarding economic penalties as follows: "The Court is not going to impose any monetary fine. Under the law, the Court, if it imposes a fine, has to also make a finding that he's got the ability to pay the fine. Obviously, [Clark]'s going to spend the rest of his life behind bars. He won't have the ability to be employed. So, no fine will be imposed. There's been no request for restitution made. Obviously, he would not have the ability to make restitution either."
 {¶ 8} In the trial court's written Judgment Entry of Sentence, the court stated that Clark "will be subject to a period of post-release control pursuant to R.C. 2929.14(F) and R.C. 2967.28(B) (C). * * * No monetary fine is imposed and no restitution is ordered. [Clark] is ordered to pay all prosecution costs, court-appointed counsel costs and any fees permitted pursuant to R.C. 2929.18(A)(4)."
 {¶ 9} Clark has appealed the entry of his guilty plea and the trial court's imposition of economic penalties and raises the following assignments of error:
 {¶ 10} "[1.] Ralph Clark's guilty plea was not knowing, voluntary, and intelligent because the trial court repeatedly misinformed him that he would be subject to a limited period of post-release control upon his release from prison.
 {¶ 11} "[2.] The trial court erred when it ordered Mr. Clark to pay court-appointed-counsel fees without making the necessary ability-to-pay finding required by R.C. 2941.51(D). *Page 5 
 {¶ 12} "[3.] The trial court erred when it ordered Mr. Clark to pay `any fees permitted pursuant to R.C. 2929.18(A)(4)' without considering Mr. Clark's `present and future ability to pay' such fees, as required by R.C. 2929.19(B)(6).
 {¶ 13} "[4.] The trial court erred when it included a punishment in the written sentencing judgment, but not in the sentence it imposed from the bench at the sentencing hearing."
 {¶ 14} Under the first assignment of error, Clark argues that the trial court mistakenly informed him that the maximum penalties that could be imposed for violating the terms of his Adult Parole Authority supervision were additional prison terms of nine months not exceeding one half of his original sentence. According to Clark, this erroneous information regarding the "maximum penalty" that could be imposed rendered his plea invalid, i.e. it was not knowingly, voluntarily, and intelligently made. We disagree.
 {¶ 15} Contrary to Clark's plea agreement and the comments made by the trial judge at the plea hearing, Clark is not subject to post-release control as detailed in R.C. 2967.28. Strictly speaking, the trial judge's erroneous statements regarding post release control made at the sentencing hearing have no bearing on the validity of Clark's plea. Post-release controls apply to classified felonies based on the degree of the felony. R.C. 2967.28(B) and (C). Aggravated murder is an unclassified felony to which the provisions of R.C. 2967.28 do not apply. State v. Wotring, 11th Dist. No. 99-L-114, 2003-Ohio-326, ¶¶ 33-36; State v. Baker, 1st Dist. No. C-050791, 2006-Ohio-4902, at ¶ 6. Accordingly, Clark was mistakenly advised that he could be subject to a period of post-release control for five years and that if he violated the *Page 6 
conditions of post release control, the parole board could impose a prison term not exceeding nine months. See R.C. 2967.28(B)(1) and (F)(3).
 {¶ 16} The basic penalties for Aggravated Murder are either death or imprisonment for life. R.C. 2929.02(A). If the court imposes the penalty of imprisonment for life, the court may specify whether the offender shall be imprisoned for life "without parole" or whether the offender will be eligible for parole after serving twenty, twenty-five, or thirty "full years of imprisonment." R.C. 2929.03(A)(1).
 {¶ 17} According to the sentence imposed by the trial court, Clark becomes eligible for parole "after serving a term of twenty-five full years," plus three additional years for the Gun Specification. R.C.2967.13(A)(3) and (B); R.C. 2929.03(A)(1)(c). "`Parole' means, regarding a prisoner who is serving a prison term for aggravated murder * * *, a release of the prisoner from confinement in any state correctional institution by the adult parole authority * * * under the terms and conditions, and for a period of time, prescribed by the authority * * *." R.C. 2967.01(E). A "parolee" remains under the supervision of the adult parole authority and under the legal custody of the department of rehabilitation and correction until granted "final release." R.C.2967.02(C); In re Ricks (Dec. 31, 1997), 11th Dist. No. 97-T-0182, 1997 Ohio App. LEXIS 6026, at *3 ("the courts of this state have consistently held that a parolee remains in the legal custody of the Ohio parole authority until a final release certificate is issued"). There is no fixed period of time within which the parole authority must grant a parolee final release. R.C. 2967.16.
 {¶ 18} "There is no constitutional or inherent right to be released before the expiration of a valid sentence." State ex rel. Miller v.Leonard, 88 Ohio St.3d 46, 47, 2000-Ohio-267, citing Greenholtz v.Inmates of Nebraska Penal Correctional *Page 7 Complex (1979), 442 U.S. 1, 7. "[W]hether to * * * grant parole, or to grant a final release from parole once granted, rests within the discretion of the Adult Parole Authority." Poole v. Barkollo, 10th Dist. No. 01AP-1249, 2002-Ohio-2300, at ¶ 6 (citations omitted); State ex rel.Duganitz v. Ohio Adult Parole Auth., 77 Ohio St.3d 190, 192,1996-Ohio-326 ("[e]ven if all of these requirements [for final release] are met, the APA's decision whether to grant final release is still discretionary").
 {¶ 19} In contrast to an offender subject to post-release control pursuant to R.C. 2967.28 (technically called a "releasee," see R.C.2967.01(J)), a parolee who violates the conditions of his parole "is returned to serve the remainder of his original sentence, not a new sentence." In re Long (1985), 24 Ohio App.3d 32, 36.
 {¶ 20} The Ohio Rules of Criminal Procedure provide that a trial court "shall not accept a plea of guilty * * * without first addressing the defendant personally and * * * determining that the defendant is making the plea voluntarily, with understanding * * * of the maximum penalty involved * * *." Crim.R. 11(C)(2)(a). With respect to the non-constitutional requirements of Crim.R. 11(C)(2), such as whether the defendant understands the maximum penalty involved, a reviewing court must determine whether there was substantial compliance. State v.Francis, 104 Ohio St.3d 490, 2004-Ohio-6894, at ¶ 45. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v. Nero (1990), 56 Ohio St.3d 106, 108, citing State v. Stewart (1977), 51 Ohio St.2d 86, 92-93.
 {¶ 21} In contrast to post release control, parole is not part of an offender's sentence. The "maximum penalty" that could be imposed on Clark was imprisonment for life. Accordingly, the trial court was under no duty to explain to Clark the *Page 8 
circumstances of parole. Hill v. Lockhart (1985), 474 U.S. 52, 56 ("[w]e have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary"); Xie v.Edwards (C.A.6, 1994), 6th Cir. No. 93-4385, 1994 U.S. App. LEXIS 23606, at *4 ("[p]arole eligibility is not a `direct consequence' of a conviction, and a defendant need not be informed of it") (citation omitted); State v. Hamilton, 4th Dist. No. 05CA4, 2005-Ohio-5450, at ¶ 13 ("[b]ecause parole is not part of an offender's sentence, the maximum penalty [for aggravated murder] is imprisonment for life");State v. Prom, 12th Dist. No. CA2002-01-007, 2003-Ohio-6543, ¶ 27 ("the court was [not] required to give Prom any advice at all concerning parole * * * and courts rarely if ever do").
 {¶ 22} Clark relies on the Twelfth District case of State v.Prom, in which the offender pled guilty to murder and was mistakenly advised of post release control rather than parole. The Twelfth District, although acknowledging that the trial court was under no obligation to advise the offender regarding parole, found that "by delving into these inapplicable post-release control penalties in a mistaken effort to comply with Crim.R. 11(C), * * * the court inadvertently created a Crim.R. 11(C) problem." 2003-Ohio-6543, at ¶ 27. The court of appeals reasoned, "[substantial compliance might arise out of an omission, but it's far more difficult to find with respect to an affirmative misstatement, especially one that understates the penalty involved." Id. at ¶ 28. Thus, the court concluded "that the trial court erred when it accepted Prom's guilty plea when, in consequence of the court's erroneous advice to her concerning post-release control, Prom necessarily was unaware of the maximum penalty to which she was exposed by her plea." Id. ¶ 29. *Page 9 
 {¶ 23} We do not find Prom persuasive. The Prom court bases its conclusion on the offender being "unaware of the maximum penalty to which she was exposed by her plea," however, eligibility for parole as well as the terms and conditions of parole were neither part of her sentence nor part of the maximum penalty to which she was exposed.
 {¶ 24} The Fourth District in State v. Hamilton rejected the conclusion reached in Prom. As in the present case, the offender inHamilton had pled guilty to Aggravated Murder and was erroneously advised of the penalties for violating post release control.2005-Ohio-5450, at ¶ 1. The Fourth District reasoned, "nothing in the court's misstatement about post-release control indicated that Hamilton would be or was entitled to early release. The maximum penalty remained life in prison. Hamilton is not subject to any greater penalty than the court described. The court's inaccurate minimization of the sanction for violating a totally discretionary early release does not change the maximum penalty Hamilton faces. Hamilton may well have been misled about how much time he would serve for violating parole, but his contention that he did not know the maximum penalty he faced for aggravated murder rings hollow." Id. at ¶ 18.
 {¶ 25} The Prom decision has also been rejected by the First Appellate District in State v. Baker, 2006-Ohio-4902, for the similar. Id. at syllabus ("When the trial court mistakenly informed a defendant convicted of murder that the defendant could be placed on a period of post-release control, the defendant's guilty plea was not rendered involuntary under Crim.R. 11(C)(2)(a): The trial court's mistake in no way *Page 10 
detracted from the defendant's understanding that the maximum penalty he faced was life in prison.").[2]
 {¶ 26} In the present case, as correctly stated by the trial judge at the plea hearing, the maximum penalty that could be imposed upon Clark was life without parole. Clark's actual sentence of life with eligibility for parole after twenty-five years was jointly recommended, but, as the trial judge made clear, the court was not bound to accept this recommendation. Accordingly, the trial court substantially complied with Crim.R. 11(C)(2)(a)'s requirement to explain the maximum penalty, notwithstanding the court's erroneous explanation of the lesser penalty of life with eligibility for parole.
 {¶ 27} The inquiry, however, does not end with the determination as to whether the sentencing judge complied with Crim.R. 11(C)(2)(a). "[A] defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. * * * The test is whether the plea would have otherwise been made." Nero, 56 Ohio St.3d at 108, citing Stewart, 51 Ohio St.2d at 93, and Crim.R. 52(A).
 {¶ 28} In the present case, there is no evidence that would suggest Clark's belief that he would be subject to post release control, assuming he would be released after twenty-eight years, induced him to enter his plea of guilty. On the contrary, the prosecution possessed a video-taped statement, two recorded statements, and an oral statement in which Clark fully admitted his culpability for Carolyn's death. Clark's motion to have these confessions suppressed was denied. *Page 11 
Moreover, Clark had been determined competent to stand trial and to have known the wrongfulness of his acts. As Clark's guilt was not reasonably in the question, the only issue for the court was whether Clark's sentence would be life imprisonment or life imprisonment with the possibility of parole. In exchange for the plea of guilty, the State agreed to recommend a sentence of life with eligibility for parole after twenty-five years. As discussed above, post release control is not applicable in murder cases. Clark cannot demonstrate prejudice by being misinformed about the possibility of post release control sanctions when such sanctions are not a possibility under any circumstances. Thus, parole remains the only possible alternative to life imprisonment without parole. Since parole is the only alternative of life imprisonment, the actual conditions of parole cannot have been a significant factor in Clark's decision to enter a plea. Cf. State v.Mitchell, 11th Dist. No. 2004-T-0139, 2006-Ohio-618, at ¶ 16
(defendant's mistaken belief about the "possibility" of early judicial release did not satisfy the prejudice requirement necessary to invalidate the guilty plea).
 {¶ 29} The late Judge Kilbane, in a separate concurring opinion inState v. Cvijetinovic, 8th Dist. No. 81534, 2003-Ohio-563, provides a perceptive analysis of the difficulty of demonstrating prejudice in a direct appeal of a plea agreement: "I agree that the record on appeal is insufficient to set aside the plea because there is no indication that Cvijetinovic relied on the judge's statements to his prejudice. These circumstances, however, are not unusual because the substantial compliance rule tends to defeat most guilty plea challenges on appeal unless prejudice is shown in the transcript of the plea hearing or the violation does not require a showing of prejudice. Where the record on appeal shows substantial compliance, the defendant *Page 12 
still may challenge his plea through Crim.R. 32.1 if he can present evidence showing that he did not have the necessary subjective understanding of the plea's consequences." Id. at ¶ 23 (citations omitted).
 {¶ 30} The first assignment of error is without merit.
 {¶ 31} The next three assignments of error challenge the trial court's imposition of financial penalties and may be considered together.
 {¶ 32} Under the Revised Code, "[t]he court shall not impose a fine or fines for aggravated murder which * * * exceeds the amount which the offender is or will be able to pay by the method and within the time allowed without undue hardship to the offender or to the dependents of the offender, or will prevent the offender from making reparation for the victim's wrongful death." R.C. 2929.02(C).
 {¶ 33} At Clark's sentencing hearing, the trial court ordered Clark to "pay court costs, for which judgment is rendered and execution may issue." In its written Judgment Entry of Sentence, the trial court stated, "[n]o monetary fine is imposed and no restitution is ordered. [Clark] is ordered to pay all prosecution costs, court-appointed counsel costs and any fees permitted pursuant to R.C. 2929.18(A)(4)."
 {¶ 34} Clark argues that the order to pay court-appointed counsel fees and any fees permitted pursuant to R.C. 2929.18(A)(4) is improper because (1) the trial court failed to state that it was imposing these penalties at the sentencing hearing and (2) the trial court failed to inquire into Clark's ability to pay these fees.
 {¶ 35} Ohio Criminal Rule 43(A) provides "[t]he defendant shall be present at the arraignment and every stage of the trial, including * * * the imposition of sentence." Thus, the defendant must be present when sentence is imposed and a trial court errs when it imposes additional sanctions, including mandatory court costs, in its *Page 13 
sentencing entry outside the defendant's presence. State v.Peacock, 11th Dist. No. 2002-L-115, 2003-Ohio-6772, at ¶ 45 ("Crim.R. 43(A) requires the trial court to inform the defendant, at his sentencing hearing, * * * that he is required to pay costs[;] [s]imply adding these sanctions in the sentencing entry violates Crim.R. 43(A)").
 {¶ 36} The State concedes the trial court erred by including additional sanctions in its sentencing entry that were not imposed at the hearing. Accordingly, that part of the court's Judgment Entry of Sentence, ordering Clark "to pay all prosecution costs, court-appointed counsel costs and any fees permitted pursuant to R.C. 2929.18(A)(4)," must be vacated. The fourth assignment of error has merit.
 {¶ 37} Under the second assignment of error, Clark challenges the trial court's ability to impose "court-appointed counsel costs" when the court has not inquired into the offender's ability to pay. There exists some ambiguity as to what the trial court meant by "court-appointed counsel costs."
 {¶ 38} Clark interprets "court-appointed counsel costs" to mean the costs of appointed counsel. Pursuant to R.C. 2941.51, governing the payment of appointed counsel, "if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." R.C. 2941.51(D). A trial court is required to make a finding on the record regarding an offender's ability to pay appointed counsel fees before assessing the costs of appointed counsel. State v. Berry, 6th Dist. No. L-05-1048, 2007-Ohio-94, at ¶ 56.
 {¶ 39} The State interprets "court-appointed counsel costs" to mean the twenty-five dollar application fee for indigent defendants. Pursuant to R.C. 120.36, "if *Page 14 
a person who is a defendant in a criminal case * * * requests or is provided a state public defender * * * or any other counsel appointed by the court, the court in which the criminal case is initially filed * * * shall assess, unless the application fee is waived or reduced, a non-refundable application fee of twenty-five dollars. * * * If the person does not pay the application fee within [a] seven-day period, the court shall assess the application fee at sentencing or at the final disposition of the case." R.C. 120.36(A)(1).
 {¶ 40} At sentencing, the trial court stated, "[t]he Court is not going to impose any monetary fine. Under the law, the Court, if it imposes a fine, has to also make a finding that he's got the ability to pay the fine. Obviously, [Clark]'s going to spend the rest of his life behind bars. He won't have the ability to be employed. So, no fine will be imposed."
 {¶ 41} These comments are consistent with the State's, rather than Clark's, interpretation of what the trial court meant by "court-appointed counsel costs." Far from finding that Clark "has, or reasonably may be expected to have, the means to meet some of the costs of" appointed counsel, the trial court concluded that Clark does not and will not have the ability to pay additional fines. Accordingly, the trial court's reference to "court-appointed counsel costs" can only be reasonably interpreted to mean the twenty-five dollar application fee for indigent defendants. However, since the trial court failed to assess this fee at the time of sentencing, this part of Clark's sentence remains vacated. The second assignment of error has merit for the reasons set forth under the fourth assignment of error, i.e. "court-appointed counsel costs" were not pronounced at the sentencing hearing. *Page 15 
 {¶ 42} Under the third assignment of error, Clark challenges the trial court's order that he pay "any fees permitted pursuant to R.C. 2929.18(A)(4)." Pursuant to R.C. 2929.18(A)(4), the trial court may order Clark to pay "[a] state fine or costs as defined in section 2949.111 of the Revised Code." "`State fines or costs' means any costs imposed or forfeited bail collected by the court * * * for deposit into the reparations fund or * * * for deposit into the general revenue fund and all fines, penalties, and forfeited bail collected by the court and paid to a law library association * * *." R.C. 2949.111(A)(2). "Before imposing a financial sanction under section 2929.18 of the Revised Code * * *, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6).
 {¶ 43} The State concedes the trial court did not comply with R.C.2929.19(B)(6) by not considering Clark's future ability to pay fees pursuant to R.C. 2929.18(A)(4).
 {¶ 44} As discussed under the second assignment of error, this part of Clark's sentence must be vacated as the trial court did not assess fees pursuant to R.C. 2929.18(A)(4) at the time of sentencing. We further note that it does not appear from the record that any "state fines or costs," as defined in 2949.111(A)(2), presently exist. Accordingly, the third assignment of error has merit.
 {¶ 45} For the foregoing reasons, we affirm the Ashtabula County Court of Common Pleas' Judgment Entry of Guilty to Negotiated Plea, accepting Clark's guilty plea to one count of Aggravated Murder with Gun Specification. We reverse the court's Judgment Entry of Sentence as to the financial penalties contained in the *Page 16 
written entry and imposed outside of Clark's presence. This matter is remanded for the limited purpose of resentencing consistent with Crim.R. 43(A) and this opinion.
MARY JANE TRAPP, J., concurs, WILLIAM M. O'NEILL, J., dissents.
[1] Clark was forty-four years old at the time of sentencing with 257 days jail credit for time served. Accordingly, he would be about seventy-three years old when he becomes eligible for parole.
[2] The Ohio Supreme Court declined to accept Baker as a discretionary appeal. State v. Baker, 112 Ohio St.3d 1471, 2007-Ohio-388. As toHamilton, the Supreme Court denied a motion to file a delayed appeal.State v. Hamilton, 112 Ohio St.3d 1417, 2006-Ohio-6712. *Page 1