DECISION. *Page 2 
{¶ 1} Defendant-appellant Jermaine Clardy shot and killed his friend Victor Smith after Smith punched out the rear passenger window of Clardy's sport utility vehicle ("SUV"). Clardy claimed self-defense, testifying that he was in fear for his life. The jury did not believe him. Clardy was convicted of murder and an accompanying gun specification. The trial court imposed a prison term of 18 years to life and ordered post-release control. We affirm the trial court's findings of guilt, but vacate the sentence in part, as the trial court erroneously imposed post-release control as part of the sentence.
 I. The Shooting {¶ 2} The following facts are undisputed and supported by the testimony of Clardy and Michael Clay, the state's witness. In the early morning hours of June 12, 2005, Clay, Clardy, and Smith, childhood friends, were together on a street in the Walnut Hills neighborhood of Cincinnati, drinking gin.
 {¶ 3} Clay and Smith had arrived in Clay's SUV, and Clardy had arrived in his SUV. Throughout the evening, Clardy kept his car keys in his pants pocket. While drinking on the street, Clardy received a phone call from Charles Edwards. At some point, Smith spoke to Edwards on the phone and began to argue with him over a recent falling out. Smith finished the conversation with Edwards, but then began accusing Clay and Clardy of taking Edwards's side. Clardy and Clay testified that Smith was very angry and that they were both trying to calm him down. But then Smith began to challenge both Clardy and Clay to fight. *Page 3 
 {¶ 4} When Clay refused to fight Smith, Smith threw a bottle of gin at the window of Clay's SUV. The bottle shattered the window. Clay, upset about the damage to his SUV, told Smith that he was leaving him there and drove off. When Clardy did not follow him, Clay returned to the two men, parked on the other side of the street, and watched the remaining events. Clay testified that when he returned, Clardy was sitting in his SUV with the driver's door open and that Smith was between the door and Clardy.
 {¶ 5} Clardy testified that Smith had challenged him to fight but that he had refused. Then Smith walked behind Clardy's SUV to the rear passenger window and began punching it in an effort to break the window. Clardy said that because he felt he was personally being attacked when Smith began punching the SUV window, he grabbed his gun, got out, and walked around the front of the car. Clardy testified that Smith began to approach him. Although Clardy said that he did not believe that Smith had a gun and that he had not noticed any weapons, he thought that Smith might have had something in his hand, because the hand that Smith had used to break Clardy's window was wrapped in a shirt.
 {¶ 6} So Clardy shot Smith three times. Clardy and Clay then left the scene. Smith died later that morning.
 {¶ 7} Edwards, the man who had made the telephone call to Clardy earlier in the night, testified that Clardy had called him and told him that he had shot Smith three times because Smith had broken one of the windows of his SUV.
 {¶ 8} The police contacted Clardy the next day on his cellular phone. John Horn, a Cincinnati homicide detective, testified that during that phone conversation, when Horn told Clardy that he was a suspect in Smith's death, Clardy never *Page 4 
mentioned that he had shot Smith in self-defense. Although Horn asked Clardy to turn himself in, he did not. Four months later, Clardy was apprehended while living under an alias.
 {¶ 9} In this appeal, Clardy now contends that (1) he was improperly sentenced to post-release control; (2) his trial counsel was ineffective; and (3) his conviction was unsupported by the weight and the sufficiency of the evidence.
 II. Post-Release Control {¶ 10} In his first assignment of error, Clardy argues that his sentence was contrary to law because it included a term of post-release control. We agree. In State v. Baker,[1] we held that the offense of murder is not subject to a period of post-release control, as parole for a murder conviction is governed by R.C. 2967.13(A)(1). Accordingly, we sustain Clardy's assignment of error and vacate Clardy's sentence to the extent that it imposes a period of post-release control. We remand so that the trial court can modify the judgment accordingly.
 III. Ineffective Assistance of Counsel {¶ 11} In his second assignment, Clardy maintains that he received ineffective assistance of counsel when trial counsel failed to object to the admission of the following: (1) morgue photographs, (2) a photograph of the victim when he was alive, and (3) Smith's mother's testimony. He also claims that counsel should have objected to leading questions by the prosecutor and requested a jury instruction on lesser-included offenses. *Page 5 
 {¶ 12} To establish ineffective assistance, the defendant must prove that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) the substandard performance actually prejudiced the defendant.[2] "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's error, the result of the trial would have been different."[3]
 {¶ 13} The Ohio Supreme Court has held that the failure to object to leading questions does not usually constitute ineffective assistance of counsel.[4] The questions here were inconsequential, and sound trial strategy might well have been not to interrupt.
 {¶ 14} With respect to the introduction of the three morgue photographs, the photographs were not so gruesome as to have had an inflammatory effect on the jury. Further, the photographs were introduced in connection with the coroner's testimony to explain and clarify that testimony.
 {¶ 15} As to the photograph of Smith when he was alive, it was probably unnecessary, as earlier testimony had established that Smith was alive prior to the shooting, but Clardy has not demonstrated how this photograph changed the outcome of his trial.
 {¶ 16} We also hold that Clardy was not prejudiced by the admission of Smith's mother's testimony. She testified that the doctors tried, but were unable, to save Smith, and that he had died. The testimony was brief. *Page 6 
 {¶ 17} Finally, we will not second-guess trial counsel's strategy in not requesting instructions on lesser-included offenses of murder.[5]
Clardy chose to assert the affirmative defense of self-defense, which, if accepted by the jury, would have acquitted Clardy of murder. "The substance of the claim of self-defense is that the defendant was justified in using deadly force intentionally. The assertion of self-defense is inconsistent with the claim that the defendant is guilty, at the most, of negligent homicide."[6] The second assignment of error is overruled.
 IV. Self-Defense? {¶ 18} In his third assignment of error, Clardy maintains that his conviction for murder was unsupported by the weight and the sufficiency of the evidence. Specifically, he argues that he proved by a preponderance of the evidence that he had acted in self-defense when he shot Smith. The jury heard his evidence, was instructed on self-defense, and rejected his claim. We surely cannot say that the jury lost its way in so finding.
 {¶ 19} One of the elements necessary to establish self-defense is that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of deadly force.[7] Shooting Smith was not Clardy's only means to escape from the danger Smith posed, even if we assume that he had posed an imminent danger of great bodily harm when he was punching out Clardy's window. Clardy was in his SUV when Smith punched out his window; he could simply have driven away. But *Page 7 
Clardy decided to grab his gun, leave the safety of his vehicle, and walk around the front of the vehicle to shoot Smith. Clardy could have driven off as Clay did when Smith broke his window.
 {¶ 20} And because Clardy did not prove self-defense, there was sufficient evidence to convict him of murder with a gun specification. Accordingly, the third assignment of error is overruled.
 {¶ 21} We affirm the trial court's findings of guilt, vacate the portion of Clardy's sentence imposing post-release control, and remand this cause to the trial court to correct its sentencing entry.
Sentence vacated in part and cause remanded.
HILDEBRANDT and DINKELACKER, JJ., concur.
[1] 1st Dist. No. C-050791, 2006-Ohio-4902.
[2] Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[3] State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of syllabus.
[4] See State v. Jackson, 92 Ohio St.3d 436, 449, 2001-Ohio-1266,751 N.E.2d 946.
[5] See State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815,848 N.E.2d 810.
[6] State v. King (1984), 20 Ohio App.3d 62, 64, 484 N.E.2d 234.
[7] See State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751,772 N.E.2d 81, at ¶ 72. *Page 1